## DANIEL PIKE *versus* JANE BACON, *Adm'x.*

Two debtors, P. & B. C., assigned, for the benefit of all their creditors, "all and singular the stock in trade, household goods, furniture, implements, excepting goods exempted by law from attachment, debts, sum and sums of money, books of account, notes, and other things due and owing the said P. & B. C., and all their real and personal estate and interest therein, as will appear by the schedule under oath and hereunto annexed, which is intended to give only a general description of the property assigned, subject to such further enlargement or diminution in value as a particular and minute survey of the property will justify." A schedule was annexed, containing a general description of the same property. The signature of the assignors was thus : "P. & B. C."— and but one seal. There was a certificate by a magistrate, bearing date the next day, that "P. & B. C." personally appeared and made oath, that the assignment embraced all their property, save such as the law exempted from attachment. *It was held*, that the assignment was to be regarded as conveying all the property of the assignors, which is required by the St. 1836, c. 239, concerning assignments.

When an assignment of the debtor's whole property has been made in good faith, for the benefit of all the creditors, its validity will not be impaired, if the assignor withholds a portion of the property actually conveyed.

If the assignor was induced to make the assignment through fear of, and to prevent, an attachment by one of the creditors, it would not thereby become invalid as against such creditor, if honestly and fairly made, according to the requisitions of the statute, for the benefit of all the creditors, and with an intention to comply with the statute.

But if the assignment is made in form according to the statute requirements, and yet not for the purpose of making an equal distribution of all the property among all the creditors, but to delay and defeat the attaching or other creditors, or to secure to the assignor a benefit by a reservation of any part of the property for his own use, it would thereby become fraudulent and void.

And if the assignor makes use of deception to induce a creditor to delay making an attachment until an assignment can be made, this is not conclusive evidence of fraud, but merely evidence to the jury, for their consideration in determining that question.

If an instrument be executed by one of a copartnership, in the name of the firm, and one seal only is affixed, and this by the consent of the other, or if there be a subsequent ratification, which may be proved by parol, it is sufficient to bind the firm.

THIS was an action of trespass brought against the defendant's intestate, as sheriff of this county, for an alleged trespass committed by Francis Davis, Jr., one of his deputies, in attaching a quantity of goods formerly owned by Patty & Betsy

Pike *v.* Bacon.

Cromett, on writs against them in favor of William Legg &
Co. and of S. E. & J. Brackett. It was admitted that the
defendant's intestate was sheriff; that Davis. was his deputy;
that he attached the goods on those writs on the third day
of July, 1840 ; and that judgments had been obtained in
those suits in favor of the plaintiffs therein ; and that the goods
had been sold in due course of law to satisfy them.   The
plaintiff claimed title under an assignment bearing date the
second day of said July.

The property assigned is described in the assignment as "all
and singular the stock in trade, household goods, furniture, im-
plements, excepting goods exempt by law from attachment,
debts, sum and sums of money, books of account, notes and
other things due and owing to the said P. and B. Cromett, and
all their real and personal estate and interest therein — as will
appear by the schedule under oath and hereunto annexed,
which is intended to give only a general description of the
property assigned, subject to such further enlargement or dimi-
nution in amount and value as a particular and minute survey
of the property will justify."    A schedule was annexed men-
tioning a large number of articles, a building standing on land
of another, notes, accounts, &c.   The signature by the as-
signors was thus, "P. & B. Cromett," and against it was one
seal only.   There was a certificate, bearing date July 3, 1840,
by a magistrate, that "Patty and Betsey Cromett" personally
appeared and made oath that the assignment contained all their
property, save such as the law exempted from attachment.

There was testimony introduced at the trial before SHEPLEY
J. tending to prove that the assignment was signed and exe-
cuted by the plaintiff and by P. & B. Cromett, and the oath
administered, and certificate made, and the goods delivered, be-
fore the attachment, and the contrary, which was submitted to
the jury. The case does not show in what manner the signa-
tures of the assignors were made, except as above appears.
It was admitted that no one of the creditors had signed it be-
fore the attachments, and that they had signed within three
months after the date, and that the assignment had been duly

advertised in a public newspaper. The defendant contended, that the assignment, if completed, was not operative as against the attaching creditors, because it did not purport to be a conveyance of all the property of the assignors, and because they had not in fact delivered to the assignee all the money and accounts, and evidences of debts due to them, but had detained some portion of them, and converted them, or caused them to be converted, to their own use; and there was proof of a debt of $15, having been so retained and converted, and testimony tending to prove that others were. The defendant also contended that the assignment was made to prevent these attachments, and in fraud of them and of other creditors, and in fraud of the law authorizing a general assignment of all the debtor's property for the benefit of all their creditors; and introduced testimony tending to prove these allegations. The testimony on these points was also submitted to the jury, and they were instructed, that for the purposes of this trial they would regard the assignment as purporting to convey all the property of the assignors which the law required; and that its validity would not be impaired, if not made fraudulently, by the assignors' withholding certain portions of the property which were actually conveyed; that if they should be satisfied, from the testimony, that the assignors were induced to make it through fear of, and to prevent, an attachment from one of the attaching creditors, it would not thereby become invalid or fraudulent as against them, if honestly and fairly made according to the requisitions of the statute, for the benefit of all their creditors, and with an intention to comply with the statute, because that was an act permitted by law; that if, from all the testimony, they should be satisfied that it was not so made, but was only made colorably and apparently in compliance with the statute, and yet for the purpose not of making an equal distribution of all their property among all their creditors, but to delay or defeat the attaching or other creditors, or to secure to themselves a benefit by any reservation of property, or the use of it, for their own disposition or control, it would thereby become fraudulent and void; that there must be a full

and fair compliance with the requirements of the statute. Joseph L. Harrington, a witness for the defendant, had testified to a conversation between him, acting as agent for Legg & Co., and the assignors, previous to the assignment, tending to prove that they intentionally deceived him by promises, and induced him to delay an attachment until they could make an assignment; and the defendant's counsel, after the above instructions were given, requested the Judge to instruct the jury, " that if any deception was used by Miss Cromett to Mr. Harrington in order to delay him until she could make an assignment, this would make it fraudulent as to him or the creditor he represented." This was declined by the Judge, but he stated to them, that such testimony was to be considered in connexion with the other testimony in the case, to enable them from the whole of it, to determine the character of the transaction. The Jury found a verdict for the plaintiff, which was to be set aside and a new trial granted, if these instructions were erroneous.

*Vose & Lancaster*, argued for the defendant, and cited *Driscoll* v. *Fiske*, 21 Pick. 503; *Shattuck* v. *Freeman*, 1 Metc. 10; *Perry* v. *Holden*, 22 Pick. 275; 7 T. R. 206; Gow on Part. 83; Story's Eq. 201.

*Bradbury*, argued for the plaintiff, and cited *Lamb* v. *Durant*, 12 Mass. R. 54; *Quiner* v. *Marblehead S. In. Co.* 10 Mass. R. 476; *Stevens* v. *Bell*, 6 Mass. R. 339; *Hatch* v. *Smith*, 5 Mass. R. 42; *Cady* v. *Shepherd*, 11 Pick. 400.

The opinion of the Court was afterwards drawn up by

TENNEY J. — Assignments, to be valid under the statute passed April 1, 1836, must provide for an equal distribution among such of the creditors as become parties thereto, after the required notice and within three months, in proportion to their respective claims, of all the assignor's estate, real and personal, excepting what is exempt by law from attachment. They must be such, that no creditor shall in any respect stand preferred to another; they must be so made, that they effectu-

.ally secure the object contemplated in the act ; otherwise they are entirely void, and can have no legal operation.

It is insisted, that the Judge, who presided in the trial of the case at bar, gave an erroneous construction to the assignment, when he instructed the jury, that they would regard it as purporting to convey all the property. of the assignors, which the law required. It is contended that it does not convey the whole, and an attempt is made to show. that it comes within the principle established by the Court in the case of *Driscoll* v. *Fiske*, 21 Pick. 503. In that, the assignment was sufficiently broad in its terms, to embrace the property in dispute, which had been attached by the defendant. But certain classes of the assignors' effects, and only such, were referred to in the schedule ; and when in pursuance of the terms of the instrument, more perfect schedules were made, after full opportunity was had to include and specify every thing, and when they were submitted to the creditors, the property in controversy was not referred to. No expectation on the part of the assignee, or the creditors, that any other than that specified and valued in the amended schedule was intended to. be embraced, could be entertained from any thing in the instrument itself. The property described was all represented as partnership property. The goods in dispute belonged exclusively to one of the firm. The Court say, " If the separate property of each partner was intended to be included, it would seem a most unaccountable neglect, not to say so in the schedule there annexed."

In this case, that class of the effects of the assignors, which it is said was not embraced in the schedule, is expressly referred to in the assignment as being one class, viz. " Books of accounts." And in the schedule, purporting on its face, as well as in the assignment, to be imperfect, the same class is specified as being " sundry debts due P. & B. Cromett on their books of accounts, amounting to a small sum." Can it be doubted that it was the intention of the assignors, so far as that intention can be ascertained from the paper, to give to their creditors the benefit of these claims ? Is there any thing indicative of a disposition to conceal them from the knowledge

of all, who were interested in their affairs, and to retain them for their own use, or for the benefit of favored creditors? Could there be any doubt that the books of accounts were a part of the fund appropriated for those who, as creditors, should become parties to the transaction? We think the assignment embraces this portion of the assignors' effects, and authorized and required the plaintiff, when he accepted the trust, to take them into his possession, and that the schedule itself is fully expressive of such an intention in the assignors.

There are indications of haste in the execution of the papers, but because there was provision made, that the description of the property assigned might be enlarged or diminished in amount and value, as a particular and minute survey thereof would justify, we do not think the conclusion is to be drawn *in law*, that the assignment did not embrace the entire property of the assignors. It was all put under the control of the assignee, and this provision seems to have been intended for the purpose of correcting any mistake which might have occurred. The haste of the transaction, and the imperfect state in which the business was left, were circumstances for the jury to consider, in ascertaining the intention of the parties.

If any thing referred to in the assignment or schedule, either generally or particularly, was retained by the assignors, as it is said there was, it could have no effect to render void the instrument previously executed in good faith. There could be no right in them to retain such property, and the assignee was vested with full power to take it into his possession, and his duty required him so to do. When the contract was executed by all the parties thereto, the rights of the creditors, whose names were affixed, had attached, and misconduct in either of the other parties, or both, could not defeat them, provided the transaction was *bona fide.*

If the assignment was duly made and executed, and was for the purpose intended in the statute, the law is answered. The inducements which may have led thereto, are not to be inquired into, if the ultimate object is secured. The wish of debtors to prevent expense by reason of attachments of their

property, previously entertained, cannot take from creditors, who execute the assignment, the advantages intended to be secured thereby.    The benefit to them provided for in the statute, would be very uncertain, if the motives of the assignors, unknown to the other parties, when the instrument was executed, could deprive them of it.    It could not have escaped the attention of the legislature, that those debtors, who would probably resort to the act, would be persons, apprehensive that their property might be attached, who would wish to avoid the expense consequent thereon.    And it is reasonable to suppose, that the legislature intended at the same time to present to insolvent debtors the means and the inducements, to make an equal distribution of their effects among all their creditors.    If this intention is fulfilled, the whole design is accomplished.    It is with the *act* of the party, and not the secret springs which prompted it, that we have to do.

The jury were instructed, that if the assignment was not made for the purpose of securing an equal distribution among all their creditors, but was made to secure to themselves a benefit by a reservation of any part of the property, it would be void; that there must be a fair and full compliance with the statute.    We think the instructions were unobjectionable..

Neither do we think the Judge erred in declining to instruct the jury " that if any deception was used to the agent of one of the attaching creditors, whom the defendant represents, by Miss Cromett, to delay him until an assignment could be made, it would make it fraudulent as to that creditor.    If the assignment was legally and fairly made, and creditors obtained a benefit therefrom, we do not see how their rights can be divested by proof of any stratagem practised by the assignors to prevent attachments, till this object could be secured.    If no attachments were made, a fraud even, practised by the debtors to prevent it, would give the creditor no lien upon the property; nothwithstanding the grossest dishonesty of this kind, it would remain as it was; and as long as it continued the property of the debtors, unaffected by any attachments, no fraudulent conduct, to impose upon a creditor, and keep him

at bay, would disqualify them from making a *bona fide* assignment under the statute for the benefit of all their creditors.

Another objection urged is, that the assignment purports to be executed in the name of the debtors' firm, and only one seal is affixed. If the evidence here stopped, we might conclude that only one of the partners was a party to the instrument, and that the firm would not be bound thereby. But it is acknowledged by both, as appears by the certificate of the magistrate before whom the acknowledgement was made. It is well settled, that an instrument executed by one of a copartnership in the name of the firm, and one seal only affixed, and this by the consent of the other, or if there be a subsequent ratification, which may be proved by parol, it is sufficient to bind the firm. All this appears, and this objection is overruled. *Cady* v. *Shepherd & al.* 11 Pick. 400, and the cases there cited.

*Judgment on the verdict.*

NOTE.—See *Paine* v. *Tucker, ante,* p. 138.