JOHN McDONALD & THOMAS MILLS v. W. EGGLESTON, B. BARKER, H. V. B. BARKER, & S. R. HAIGHT.

*Partnership. Power of one to bind the firm by deed. How the instrument may be proved, so as to bind the firm, when so executed.*

Instruments under seal may be executed for many purposes by one partner, which will be binding on the firm.

But instruments executed in that manner, in the absence of other partners, will be binding on the firm, only in transactions that transfer an interest.

A mere partnership relation will not authorize one partner to execute an instrument under seal, whereby a new, and original obligation is created, which will be binding on the partnership, as a specialty debt, or which can be enforced by the action of covenant.

But an instrument of this character, and executed in this manner, may be rendered obligatory by a previous parol authority, or by a subsequent parol ratification, and would in either event become the deed of the company; and much slighter acts will produce that effect, where the subject matter of the agreement is within their partnership dealings, than where it has no connection with the business of the firm.

And parol testimony is admissible to prove, that the instrument is the deed of the firm, and became such by the signature of one partner, in the name of the firm, by showing a previous authority for that purpose resting in parol, or that they were present at the time, or subsequently ratified the same either expressly or impliedly, and this implication may be drawn from the conduct of the partners, or the course of dealing by the firm.

And where the evidence, though resting in parol, tends to prove this in whole or part, it should go to the jury as tending to prove the execution of the instrument.

ACTION of covenant. Plea, *non est factum*, and trial by jury. On trial the plaintiffs introduced the following deed: "Articles "of agreement made this 16th day of May, A. D. 1846, by and "between John McDonald and Thomas Mills of the one part, and "Eggleston, Barker & Co. of the second part: Witnesseth, That "for and in consideration of the payments and covenants herein- "after mentioned to be made and performed by said parties of the "second part, the said parties of the first part do hereby prom- "ise and agree to execute, construct and finish in every respect, in "the most substantial and workman-like manner, and to the satis- "faction and acceptance of the engineer of the Vermont Central

"Railroad Company, the grading and masonry of the Vermont
"Central Railroad, on sections No. one and two of the first divis-
"ion, now under charge of Beckwith, engineer. And the said
"grading and mason work shall be made and completed as describ-
"ed in the following specifications, on or before the first day of Ju-
"ly, A. D. 1847."

[Here follow the printed specifications, &c.]

The contract then proceeds in writing :

"It is understood and agreed, that payment shall be made to the
"parties of the first part, at such times only as payments are re-
"ceived for estimates made upon said work.

"This contract shall take effect and be in full force from and af-
"ter the 25th day of May instant, it being understood that all
"work done and estimated up to the said 25th instant, is to be
"paid for and settled agreeably to a former contract entered into
"between the parties of the second part and Samuel R. and Hen-
"ry A. Brown, on the third day of January, 1846.

"In witness whereof we have hereunto set our hands and seals
"this 16th day of May, A. D. 1846."

(Signed,)　　　　"EGGLESTON, BARKER & Co.

by B. BARKER,"　　(Seal)

"JOHN MCDONALD,"　(Seal)

"THOMAS MILLS."　(Seal)

To prove the execution of this deed, the plaintiffs introduced, as
a witness, one Loomis Palmer, who testified that William Eggles-
ton, Benajah Barker, Henry V. B. Barker and Storm R. Haight,
the defendants, were partners, that they took a contract of S. F.
Belknap in the fall of 1845, to make the Central Railroad from
the mouth of Dog River west to Lake Champlain, that they com-
menced business in the winter after, and that the witness was em-
ployed by them, as clerk and cashier, and had the management of
their account books and money concerns, received of said Belknap
the money on the monthly estimates, and paid out the same from
December, 1845, to August, 1846, and kept the accounts, contracts
and papers of the firm at his office in Montpelier. That the Bar-
kers, Haight, and witness came to Burlington, on the 25th day of
May, 1846, for the purpose of sub-letting sections 1 and 2, to the
plaintiffs; that they were negotiating until the 26th day of May,
when the terms of the contract were agreed upon, and the witness

filled out the paper produced, at the American Hotel in said Burlington; and that B. Barker signed the same for the firm in the presence of the witness, but that he did not see the other signatures put to the said paper, it being done afterwards. That H. V. B. Barker and S. R. Haight were about the house, and that witness has no doubt they knew the contract was signed, but that he does not know that they were in the room when B. Barker signed the paper.

That there was a duplicate of the paper made, which the witness took and kept in his office in Montpelier; that defendants, H. V. B. Barker and Haight never had much to do about the office. That it was the custom of witness, when he filled out a contract to put seals to it. That defendant, Eggleston, resided in Albany, New York, and that witness never saw him in Vermont, but once or twice; once in the fore part, and once in the latter part of July, 1846; that there was some difficulty, and witness wrote to him to come, and he came to Montpelier, and with witness and one or two of the other partners looked over the concerns of the company, and witness made such explanations as were required of him.

That the duplicate paper or contract was among the papers, at the office in Montpelier, at the time of this looking over by the defendants; and that after looking over, defendants then present, with witness, came down the line of the Railroad to Burlington.

That the plaintiffs went to work on sections one and two, and believes defendants went on to those sections, when they came down the road to Burlington; that witness received the money paid by said Belknap for the work done by plaintiffs under the contract, and paid the plaintiffs. That witness made the form of the contract, and submitted it to said Haight and B. Barker, and then caused it to be printed; and that the other contracts made by the defendants sub-letting the work, were generally in the same form and signed by B. Barker, in the same way as this. That witness made out a statement of all the concerns of the company up to the first of July, 1846, thinks it was after Eggleston was at Burlington, and that he sent one of them to Eggleston, but does not know that he ever received it, does not know that Eggleston ever took any active part in conducting the business of the company, except as before stated.

The counsel for the plaintiffs informed the court that they had

put in all their testimony in support of the general issue on their part.

The counsel for defendants insisted, that there was no legal evidence tending to prove that the paper produced was the joint deed of the defendants.

The court, March Term, 1853,—PIERPOINT, J., presiding,—so decided, and directed the jury to return a verdict that the writing was not the deed of the defendants. To this decision and direction to the jury, the plaintiffs excepted.

*Underwood & Hard* and *W. W. Peck* for plaintiffs.

I. When a contract is within the ordinary scope of a partnership, or relating to its affairs, and there are no statutory regulations on the subject, a partner may execute it under seal for and in the name of his firm, and his authority be by parol, provided it is specially given for the purpose. The proof of the authority may be express or implied, and may be antecedent consent or ratification.

The rule that the power must be under seal, is purely technical and embarrassing to commercial relations, and therefore is not applicable to partnerships. Coke Lit. 231. Case in year books, stated in *Cady* v. *Shepherd,* 11 Pick. 400. Lovelace's case W. Jones R. 268, stated in *Ball* v. *Dunsterville,* 4 T. R. 313. *Britton* v. *Burton,* 1 Chit. 707. *U. S.* v. *Astley et al.,* 3 Wash. 510, 511. 4 Wash. C. C. 471. *Halsey et al.* v. *Whitney et al.,* 4 Mason 231–2. *Ludlow* v. *Simonds et al.,* 2 Cains' Cas. affirming the doctrine in *Ball* v. *Dunsterville,* and in Lovelace's case. *Mackay* v. *Bloodgood,* 9 Johns. 285. *Randall* v. *Van Vetchen,* 19 Johns. 60. *Skinner* v. *Dayton,* 19 Johns. 513. *Smith* v. *Kerr,* 3 Comst. 144. *Greene* v. *Seton,* 1 Hall, 262. *VanDusen* v. *B———,* 18 Pick. 229. *Swan* v. *Stedman,* 4 Met. 548. *Fitchorn* v. *Boyer,* 3 Watts 159. *Bond* v. *Aitkin,* 6 Watts & S. 165. Story on Part. § 120, 122. 3 Kent's Com. 47–8. Coll. on Part. § 465, 467.

II. Upon the principle of all the cases, the parol authority suffices, if it specially embraces the contract in question. If it consists in subsequent consent it is immaterial- whether it rests upon *actual knowledge* of the execution of the contract, or reasonable belief that the contract has been so executed. ‾

Upon the authority of *Greene* v. *Seton,* the authority may be *general,* especially for that *mode* of execution, provided it be addi-

tional to the authority conferred by the partnership itself, and is devisable in like manner. In either of these views the evidence in this case tended to show a special parol authority to execute under seal.

*Phelps & Chittenden* for defendants.

Eggleston did not execute the contract declared on, nor authorize its execution by his partners.

A partner cannot bind his firm, by executing a sealed instrument in their name, unless the others are present and assenting, or have given previous authority by deed. *Ball* v. *Dunsterville*, 4 Term R. 313. *Harrison* v. *Jackson*, 7 Term R. 207. *Williams* v. *Walsby*, 4 Esp. Rep. 220. 3 Eng. Com. Law 54. 1 Montague on Partnership 42. *Mackay* v. *Bloodgood*, 9 Johns. 285. *McBride* v. *Hagar*, 1 Wend. 326, 334, 337. *Blood* v. *Goodrich*, 9 Wend. 68. Same Case, 12 Wend. 525.

And where a subsequent parol ratification by the absent partner, is held effectual, it binds him as upon a *parol* execution of the contract only, and does not render him liable, in an action of covenant. He is held to adopt the contract and not the seal. *White* v. *Cayler*, 6 Term 176. *Bank of Columbia* v. *Patterson*, 7 Cranch 299. *Randall* v. *Van Vechten*, 19 Johns. 60. *Skinner* v. *Dayton*, 19 Johns. 513. *Evans* v. *Wells*, 22 Wend. 340. *Lawrence* v. *Taylor*, 5 Hill 113. *Worrell* v. *Mann*, 1 Selden 229. *Damon* v. *Grandy*, 2 Pick. 352. This principle is well settled and rests upon obvious and forcible reasons. It cannot be departed from with safety, and can never work injustice.

There are some American cases, where the subsequent *parol* ratification is held an adoption of the seal and sufficient to render the party liable in covenant. These cases are opposed to the current of authorities, and cannot be sustained upon principle. Most of them, however, are distinguishable from the present case.

But even these cases, (as do all which treat a subsequent ratification as effectual for any purpose,) hold that the adoption of the contract by the partner sought to be charged, must be distinct, unequivocal and upon full knowledge ; and were probably induced by very strong instances of such recognition and assent.

In the present case the evidence has not the least tendency to

show that Eggleston ever knew of the existence of the contract, and much less that he ever adopted it, or ratified it as his own.

It is not pretended that the statement made out by Palmer, even if it ever reached Eggleston, contained any allusion to this contract or the manner of its execution.

The opinion of the court was delivered by

ISHAM, J. This action is in covenant. The questions in the case arise under the plea of *non est factum*, which puts in issue the execution of the instrument on which the action is brought. The agreement was signed and sealed, in the name of Eggleston, Barker & Co., by B. Barker, one of the firm. It is insisted that he had no authority as a partner to execute the instrument in that manner ; that it is not binding on those partners, who were absent at the time, and who had not previously assented to its execution; and that no testimony was introduced, tending to show a subsequent ratification of its execution, by the absent members of the firm, sufficient to render it their deed.

We learn from the case that the defendants were the persons composing the firm of Eggleston, Barker & Co., and that in the fall of 1845, they contracted with Mr. Belknap to construct the Vermont Central Railroad, from the mouth of Dog River to Lake Champlain. The first and second sections of the road were afterwards sub-let by the defendants to the plaintiffs, for construction. It is obvious, therefore, that the subject matter of this agreement, on the part of the defendants, was within the scope of their partnership business, and that this agreement was made, to carry into effect the object for which their relation as partners was formed, and to insure, to that extent, the performance of that contract, which they were under obligations with Mr. Belknap to execute. It is unquestionably necessary for the plaintiffs to show those facts, which will render this instrument the deed of all the defendants ; otherwise this joint action of covenant cannot be sustained.

At common law, one partner could not charge the firm, by deed, with a debt or other obligation, even in commercial dealings, without a prior authority, under seal, for that purpose. Neither could such an instrument be subsequently ratified, so as to make it the deed of the company, except by an instrument, under seal.

*Harrison.* v. *Jackson,* 7 Term 207. Holt N. P. C. 141. Smith's Mer. Law 68. 1 Amer. Lead. Cas. 446 note. The reason for this rule is founded on principles of English law, which do not exist in this state; that such a power would enable one partner to give a favorite creditor a lien on the real estate of the partners, and, consequently, a preference over the simple contract creditors of the firm. Though this reason for that rule does not exist in this state, the general principle has been, and is recognized and sustained. The strictness of this rule, however, has been greatly relaxed, to suit the exigencies of partnerships, and commercial associations, and by later authorities in England, and in this country, instruments under seal may be executed for many purposes by one partner, which will be binding on the firm. Thus one partner may release, under seal, an obligation or debt due the firm; 1 Wend. 326. 7 N. Hamp. 550. Or execute a power of attorney, under seal, to another, for that purpose. *Wells* v. *Evans* 20 Wend. 251. S. C. 22 Wend. 325. It has been held "that when a seal "is not essential to the nature of the contract, and will not change "or vary the liability, the addition of a seal will not vitiate it; "and when an act is done, which one partner may do without "deed, it is not less effectual, that it is done by deed." On this subject Justice Story has remarked, Story on Part. § 122, "that "in cases where the contract would have been binding, if made "without a deed, there does not seem to be any solid reason why "the act, when done, should be vitiated by being under the signa- "ture and seal of the firm." That this agreement would have been obligatory if it had been executed as a simple contract, and not under seal, there can be no doubt, for it was made to advance their partnership interests, and in the benefits derived from it they have participated.

We think, however, that principle does not apply to a case of this character. The doctrine seems to be established that an instrument executed in that manner, in the absence of other partners, will be binding on the firm, only *in transactions that transfer an interest.* Thus in *Milton* v. *Masher,* 7 Met. 244, it was held that a mortgage of personal property need not be under seal, and that a mortgage of that character is not vitiated, by one partner affixing a seal to the instrument. The same principle is sustained in 1 Met. 515. 2 Stewart 280. 1 Amer. Lead. Cas. 447, and

cases cited. The rule, however, is of long standing, and fully sustained by the authorities, that a mere *partnership relation will not* authorize one partner to execute an instrument, *under seal,* whereby *a new and original obligation is created* which will be binding on the company, as a specialty debt, or which can be enforced by the action of covenant. If the case, therefore, is made to rest on the circumstances which took place at the time the instrument was signed by B. Barker, we do not see how it can be sustained as the deed of all the defendants. We have no doubt, however, that an instrument of this character, executed in this manner, may be rendered obligatory by a previous parol authority, or by a subsequent parol ratification; and in either event, the instrument will become the deed of the company; and that much slighter acts will produce that effect, where the subject matter of the agreement is within their partnership dealings, than it will, where it has no connection with the business of the firm, and from which they are to derive no benefit. In the case of *Ball* v. *Dunsterville,* 4 Term 313, it was held that if the partners were all present, when one of their number signed the instrument in the partnership name, and affixed thereto a seal, it became the deed of all. The authority for the execution of that deed was not under seal, but rested in parol; that is, parol testimony was admitted to prove the presence of the partners at the time of its execution, and that circumstance was treated, not only as an adoption of the signature, but of the seal, so as to render it the deed of the firm, upon which covenant was sustained. If parol testimony is admissible to prove an authority from that source, it is equally so to prove other circumstances, showing their assent to such an execution of the instrument. The actual presence of all the partners may perhaps afford more satisfactory evidence of their assent, than other circumstances which may exist; but that affects, simply, the credibility of the testimony, not its competency. If parol testimony is admissible in one case, it is in the other. If a power of attorney under seal, can be dispensed with in one instance, it may in the other, also. This view of the subject is taken by WILDE, J., in *Cady* v. *Shepherd,* 11 Pick. 405 in which he remarks " that in the " case of *Ball* v. *Dunsterville,* importance was attached to the cir- " cumstance, that both partners were present when the deed was " executed; and it may be important, as being the most satisfac-

"tory proof of the assent of the non-subscribing partner; *but in* "*no other respect does it appear to be material.*"

If a previous authority, resting in parol, will render the instrument binding on the firm, as a deed, it follows that a subsequent ratification of the instrument may be proved by circumstances resting in parol; for no greater authority is requisite to ratify an instrument, than is required to execute it. The power that can create, can legally ratify. This conclusion has been drawn and sustained wherever the case of *Ball* v. *Dunsterville* has been recognized and adopted, particularly by the courts in this country. Chancellor Kent, 3 Kent's Com. 51, has reviewed the cases on this subject both in England and this country, and he observes, "that an absent partner may be bound by a deed executed on be- "half of the firm by his copartner, provided there be either a pre- "vious parol authority, or a subsequent parol adoption of the act; "and that such ratification amounts in judgment of law, to an ex- "ecution of the deed by all the partners, though executed by one "only." The ratification does not make a verbal or simple contract merely, for it is an adoption by the party of the signature and seal affixed to the name of the firm. In Collyer's Treatise on Partnerships § 467, it is said "that the American cases have gone farther than those in England in relaxing the former strict- "ness of the law, and that it is well settled in the United States, "that an absent partner may be bound by a deed executed on be- "half of a firm by his copartner, provided there be either a parol "authority, or a subsequent parol adoption of the act." The rule is also sustained in 1 Amer. Lead. Cas. 446, in which it is remarked "that it is settled, after a thorough investigation of the "cases, that a partner may bind his copartner by an agreement "under seal, in the name of the firm, provided the copartner as- "sents to the contract, previously to its execution, or afterwards "ratifies and adopts it; and this assent or adoption may be by "parol, *and need not be express and special, but may be implied* "*from the conduct of the other partner, or the course of dealing* "*by the firm.*" *Swan* v. *Stedman,* 4 Met. 548. *Bond* v. *Aitken,* 6 Watts & Serg. 165. *Pike* v. *Bacon* 21 Maine 280. *Darst* v. *Roth,* 4 Wash. 471. 1 Brack. 462, by Marshall, Ch. J. We are satisfied, that parol evidence is admissible, to prove that this instrument is the deed of the defendants, and became such by the

signature of one partner, in the name of the firm, by showing a previous authority for that purpose, resting in parol, or that they were present at the time, or subsequently ratified the same, either expressly or impliedly, and that this implication may be drawn from the conduct of the partners, or the course of dealing by the firm.

The court directed a verdict for the defendants, thereby treating the evidence introduced as having no tendency to show a subsequent ratification of the instrument, and as being incompetent to be taken into consideration by the jury. In relation to H. V. B. Barker, and Mr. Haight, both of whom, it appears from the case, were about the house at the time the instrument was executed, and who came there for that purpose, there can be no doubt, that those circumstances should go to the jury as evidence of their assent to its execution; as to them, the case in its facts seems to fall within that of *Ball* v. *Dunsterville.* In relation to Mr. Eggleston, the remaining partner, more difficulty exists. It does not appear that he had ever been in that vicinity previous to July, 1846, about two months after this instrument was executed. In consequence of some difficulties in the affairs of the company, he was sent for, and came to the office of the company at Montpelier on that account. On that occasion, he was led to the examination of the affairs of the company, its liabilities and resources; to the examination of the money which was received from Mr. Belknap, under their contract, and to its expenditure by them in the construction of the road. As these plaintiffs were then employed in constructing their part of the road, and naturally would be entitled to the amount due them on the monthly estimates, it is not unreasonable to conclude that Mr. Eggleston, in seeing to the expenditures of the company, became informed of the contract made with the plaintiffs for the construction of those sections of the road. The duplicate of this instrument was among the papers in the office. After that examination they went to Burlington, on the line of the road, and on the sections where the plaintiffs were at work. A statement of the affairs of the company was sent to him by mail, soon after his return to Albany, and the legal presumption is, that it was received. It is true, that all this may exist, and he not know that this contract was executed by deed; yet, they are very consistent with his examination of that agreement, and his knowl-

edge of its provisions.   The question now is, not whether the testimony is sufficient, but whether those circumstances have a tendency to show such knowledge, and that no objections were made to its execution in that form.   Of this the jury are to judge, and draw their own conclusions.   If those circumstances have such a tendency, they should not have been taken from the consideration of the jury.   We think the plaintiffs were entitled to have that testimony submitted to the jury, as having a legal tendency, in proof of the issue formed in the case.

The judgment of the County Court must be reversed, and the case remanded.