[No. 9537. Department One. July 6, 1911.]

AMERICAN SAVINGS BANK & TRUST COMPANY, *Respondent*, v.
GEORGE B. HELGESEN *et al., Appellants.*[1]

BILLS AND NOTES—INDORSEMENT—BONA FIDE PURCHASER. Notes
taken as collateral security for a preexisting debt are acquired for
value, where the purchaser surrendered other security given when
the debt was incurred.

SAME—TRANSFER. Since, under Rem. & Bal. Code, § 6255, usury
does not render a note void, the defense of usury is not available
against a holder acquiring the notes before maturity in good faith
for value.

MORTGAGES—TRANSFER—DEFENSES—BONA FIDE PURCHASER. Where
a mortgage debt is evidenced by negotiable paper, a transfer
before maturity in good faith for value frees the mortgage from
defenses by reason of infirmities not available against the notes.

MORTGAGES—DEEDS—GRANTING CLAUSE—AFTER-ACQUIRED TITLE—
ESTOPPEL. An after-acquired title of mortgagors inures to the
benefit of the mortgagee, although the mortgage contained no ex-
press words of warranty, where it did contain a granting clause,
which, under Rem. & Bal. Code, § 8748, would in a deed constitute
a covenant of seizin and for quiet enjoyment, sufficient to pass to a
grantee an after-acquired title under Id., § 8765; since the same
rule applies as between mortgagor and mortgagee.

BILLS AND NOTES — INDORSEMENT — ADDITION OF "WITHOUT RE-
COURSE"—EFFECT. The indorsement of a note "without recourse"
does not let in equitable defenses, where the words "without re-
course" were not written at the time the notes were acquired, but
were subsequently inserted as an accommodation to the indorser in
contemplation of a subsequent negotiation of the notes, the deal
for which was not consummated.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—INDORSEMENT OF
NOTE. An agent's authority to sign his principal's name to the in-
dorsement of notes sufficiently appears, where he made the loan
and was personally interested therein, and received the notes and
had possession thereof as agent, although his power of attorney,
standing alone, might not have been sufficient.

MORTGAGES—LIENS—PRIORITY. Notes and a mortgage given Oc-
tober 1st for a preexisting debt, assigned November 4th as collateral
security for another preexisting debt, have priority over a judg-

[1]Reported in 116 Pac. 837.

ment secured against the mortgagors on December 4th; since liens securing preexisting debts take priority from the respective dates of their creation.

MORTGAGES — EXECUTION — SIGNING — ACKNOWLEDGMENT.    Under Rem. & Bal. Code, § 8746, requiring deeds to be signed and making the acknowledgment a necessary part of its execution, the acknowledgment of a fully prepared mortgage which the mortgagor inadvertently omitted to sign, and which contains the mortgagor's name as grantor, is equivalent in law to a signing of it, or to the adoption of the entire instrument, including the name written thereon as grantor (GOSE and FULLERTON, JJ., dissenting).

Appeal from a judgment of the superior court for Mason county, Mitchell, J., entered January 20, 1911, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in consolidated actions upon promissory notes and for the foreclosure of mortgages.   Affirmed.

*George W. Bright,* for appellant Helgesen, contended, among other things, that the mere acknowledgment by a party that she signed a written transfer which was not in fact signed, is not a substitute for signing, or proof of it. 1 Cyc. 541; *Jones v. Gurlie,* 61 Miss. 423; *Helton v. Asher,* 103 Ky. 730, 46 S. W. 22, 82 Am. St. 601; *Cheney v. Nathan,* 110 Ala. 254, 20 South. 99, 55 Am. St. 26; *Goodman v. Randall,* 44 Conn. 321.    Where there is no legal execution of an instrument, the acknowledgment of it is a nullity, and cannot be sustained as against the rights of a judgment creditor.    *Pratt & Fox v. Clemens,* 4 W. Va. 443; *Hall v. Redson,* 10 Mich. 21; *Drury v. Foster,* 2 Wall. 24. The statute required the signing of the instrument by the party to be charged, and this act could not be performed for him by the other party to the contract.    20 Cyc. 275, 276; *Bent v. Cobb,* 9 Gray (Mass.) 397, 60 Am. Dec. 295; *Carlisle, Jones & Co. v. Campbell,* 76 Ala. 247; *Tull v. David,* 45 Mo. 444, 100 Am. Dec. 385.    There can be no ratification or adoption of the acts of Gray, the grantee, in signing or executing the instrument for Mrs. Erickson.    1 Words and Phrases, p. 209; Id., vol. 7, pp. 5928-29; *Ellison*

*v. Jackson Water Co.*, 12 Cal. 542; *Shepardson v. Gillette*, 133 Ind. 125, 31 N. E. 788; *Backhaus v. Buells*, 43 Ore. 558, 72 Pac. 976, 73 Pac. 342; *Ballard v. Nye*, 138 Cal. 588, 72 Pac. 156.

*Hamlin & Meier*, for appellants Erickson.

*Farrell, Kane & Stratton*, for respondent.

PARKER, J.—This is an action to recover judgment against Samuel Erickson and wife upon two negotiable promissory notes evidencing their community debt in the total sum of $2,500, and also to foreclose two mortgages given to secure the same upon property in Mason county, one being upon land and the other upon personal property. George B. Helgesen was made a defendant because he has become the owner of the land by virtue of an execution sale thereof under a judgment rendered in his favor against the defendants Erickson and wife. A trial before the court resulted in a personal judgment against Erickson and wife for the amount of the notes, and a foreclosure of the mortgages against all of the defendants. From this disposition of the cause, the defendants have appealed.

The right of respondent to judgment upon the notes and to foreclosure of the mortgage depends largely upon its having become holder of the notes in good faith for value before maturity, and upon the lawful execution of the mortgage upon the land by Erickson and wife.

In October, 1906, Erickson and wife executed five negotiable promissory notes for the total sum of $3,190, payable to a Mrs. DeWees. These notes were delivered to Charles H. Gray, her son, who was her agent in the making of the loan evidenced by the notes. These notes were secured by mortgages executed about the same time upon the same land and personal property here involved. While they were taken in the name of Mrs. DeWees, the evidence tends to show that the debt they evidenced was to some extent the property of

Gray as well as of Mrs. DeWees.  For the purpose of argument we will assume, as is contended by counsel for appellant, that the interest charged and agreed to be paid upon this loan was greater in amount than the highest rate allowed by law, and was, therefore, usurious under Rem. & Bal. Code, §§ 6251 and 6255.  This usurious interest agreement did not, however, appear upon the face of the notes.  It was accomplished by making the amount of the principal stated in the notes greater than the sum actually loaned.  These notes matured at different dates, the first matured on February 1, 1907, and the last on February 1, 1908.  Before the maturity of any of them, they were all assigned to respondent as collateral security to a loan evidenced by notes payable by Gray to respondent.  This loan appears to have been a preexisting debt of Gray to respondent, but the evidence also tends to show that these DeWees notes were given to respondent in lieu of other securities which respondent then held as security for the Gray loan, and which were then surrendered to Gray. Just when these surrendered securities were delivered to respondent by Gray, relative to the time of the making of the Gray loan, is not clear; but the general course of business testified to between Gray and respondent indicates that they were given by Gray to respondent at the time of the making of the loan, or were substituted for other securities which had been given to respondent by Gray at that time.  These notes were assigned to respondent by the endorsement of Mrs. DeWees made by Gray as her agent, and also by his personal endorsement.  The mortgages securing these notes were also assigned to respondent about the same time.

On October 1, 1907, Gray's debt to respondent being still unpaid, or at least largely so, it evidently having been continued by renewal from time to time, and the larger part of the debt evidenced by the DeWees notes having matured, and the larger part of such matured portion being unpaid, respondent insisted that Gray procure new notes and mortgages from Erickson and wife to take the place of the DeWees notes

and mortgages as collateral security to Gray's indebtedness to respondent. Thereupon Gray procured from Erickson and wife the execution of the notes here sued upon. These notes were made payable direct to Gray instead of Mrs. De-Wees. They bear no evidence of usury upon their face, and it is not claimed that they are tainted with usury, save as the DeWees notes were so tainted. At the same time, for the purpose of securing these new notes, new mortgages upon the same personal property and upon the same land were executed by Erickson and wife, except as it may be concluded that the new mortgage upon the land was not lawfully executed because of the failure of Mrs. Erickson to actually subscribe her name thereto with her husband. There were several places for Mrs. Erickson to sign in the execution of these new papers, in all of which she signed her name with her own hand, except upon the new mortgage upon the land. This new mortgage was then complete in every respect except as to her actual subscription in the usual place for signing at the foot thereof. Her name then appeared in full in the body of the mortgage with that of her husband as grantor. Her husband then subscribed his name thereto in the usual manner, and both of them then subscribed their names to all of the other papers. Acknowledgment of the execution of the mortgage as having been made on October 1, 1907, by both her and her husband is certified to in usual form by endorsement thereon by a notary public. It is clear from the evidence that Mrs. Erickson then intended to sign this mortgage, and that she thought she had signed it, as she had signed the other papers in connection with the giving of the new notes, and that she then actually acknowledged the execution of the mortgage. It is equally clear that the notary and others present thought she had then subscribed her name to the mortgage. This omission was not discovered until some months later. Soon after October 1, these new notes and mortgages were assigned to respondent by Gray, and the DeWees notes and mortgages were thereupon surrendered and

cancelled.   The evidence tends to show that the amount due on the DeWees notes was approximately the same as the amount of the new notes at the time of the substitution.

On October 18, 1907, the new mortgage on the land was duly recorded in the auditor's office of Mason county.   On December 4, 1907, appellant Helgesen recovered a judgment against Erickson and wife in the superior court of King county upon a community debt owing to him by them.   On December 7, 1907, a transcript of this judgment was duly filed in the office of the clerk of the superior court for Mason county, so that it then became a lien upon the land of Erickson and wife in that county under Rem. & Bal. Code, § 445. This judgment and an execution sale thereunder by the sheriff of Mason county is the basis of appellant Helgesen's title to the land.   Thereafter it was discovered that Mrs. Erickson had not subscribed her name to the new mortgage upon the land.   She was advised of that fact and asked to subscribe her name thereto, which she did in the presence of the same notary who had taken her acknowledgment thereto on October 1st.   We think the evidence shows that she then signed it of her own free will, and that she then stated, in substance, that she thought she had signed it at the time of her acknowledgment on October 1st.   This mortgage was again recorded on March 25, 1908, in the auditor's office of Mason county, but without any additional certificate of acknowledgment.

We will first notice the contention of counsel for appellants that respondent did not acquire the notes in good faith. It is undisputed that respondent acquired all of these notes, as well as all of the DeWees notes, long before maturity. Whether or not respondent acquired them in good faith involves only questions of fact touching the notice it had of the usurious interest charged and agreed to be paid upon the debt due from Erickson to Mrs. DeWees or Gray.   A careful reading of all of the evidence convinces us that the trial court was fully warranted in concluding, as it did in ef-

fect, that respondent, at the time of acquiring both the De-Wees notes and the new notes, had no notice whatever of the usurious nature of the agreement for interest upon the loan they were given to evidence, nor of any other possible defense available to Erickson and wife as against Mrs. DeWees or Gray. In reaching this conclusion, we assume that in this case the burden of proving good faith and want of notice of infirmities in the notes was shifted to respondent, under our holdings in *Keene v. Behan*, 40 Wash. 505, 82 Pac. 884, *Ireland v. Scharpenberg*, 54 Wash. 558, 103 Pac. 801, and other cases. Neither have we overlooked the fact that respondent's proof upon this question consists almost wholly of the testimony of witnesses who were interested in respondent's favor. The trial judge saw and heard these witnesses testify, and while he may not have been required, as a matter of law, to find in respondent's favor upon this evidence alone, under the decisions last cited, yet he was privileged to so find, and under all the circumstances shown, we think he was fully warranted in so doing.

Touching the question of respondent acquiring the notes for value, it is insisted that they were taken as collateral security for a preexisting debt, and hence, are subject to any defense which could have been successfully urged against the original holder. Assuming that they were taken to secure a preexisting debt, which, however, may be well doubted, as a matter of law, in view of the substitutions made, we think they may be considered as being acquired by respondent for value. 7 Cyc. 932; *Peters v. Gay*, 9 Wash. 383, 37 Pac. 325. The case of *McDonald & Co. v. Johns*, 62 Wash. 521, 114 Pac. 175, it may be argued militates against this view. That case only involved the question of priority between two mortgages given to secure preexisting debts due different creditors. This case involves rights of an assignee of *negotiable notes* with the mortgage securing them, as collateral security to a preexisting debt, as against the lien of a subsequently rendered judgment upon the land mortgaged.

That decision does not hold that the taking of negotiable paper under such circumstances is not in good faith and for value. We will presently notice how the mortgage is freed from infirmities, as well as the notes, by the transfer to respondent.

Since the contracting for a greater rate of interest than is allowed by law does not render the notes void under Rem. & Bal. Code, § 6255, it seems clear that the defense of usury is not available to the maker against a holder acquiring the notes in good faith for value before maturity. This is one of the infirmities curable by such a transfer. 29 Am. & Eng. Ency. Law (2d ed.), 521; 1 Daniel, Negotiable Instruments (5th ed.), 197; Rem & Bal. Code, § 3443.

It is insisted that while the notes, because of their negotiable character, may be freed from infirmities by the transfer, the mortgage is nevertheless subject to all of the defenses it would be in the hands of the original payee. There may be merit in this contention in cases where the debt secured by the mortgage is not evidenced by negotiable paper. Where it is so evidenced, the rule seems to be settled by the great weight of authority as stated in 1 Daniel on Negotiable Instruments (5th ed.), § 834, as follows:

"There is no doubt that a mortgage, or any other security given for the payment of a bill or note, passes by a transfer of the bill or note to the transferee. The doctrine has been laid down by a number of cases, and is stated by Mr. Hilliard, in his treatise on mortgages, that if a mortgage is given to secure a negotiable note, and both the mortgage and the note are transferred before maturity to a *bona fide* indorsee, such indorsee takes the benefit of the mortgage as well as of the note, clear of any equities between the original parties. 'It is the debt which gives character to the mortgage, and gives the rights and remedies of the parties under it, and not the mortgage which determines the nature of the debt.' "

In 1 Jones on Mortgages (6th ed.), § 834, the learned author says:

"At common law, so far as a mortgage is merely a debt or security for a debt, it is a chose in action not negotiable, and

therefore not assignable.    So far as a mortgage is a convey-
ance of the legal estate, an assignment or conveyance of such
estate may be made by a deed in the usual form.    A mortgage
note, if negotiable in form, is of course assignable by indorse-
ment, and the assignee takes the legal title to it.

"But the debt being the principal thing imparts its charac-
ter to the morgage; and although the mortgage itself in the
beginning is only assignable in equity, the legal rights and
remedies upon the debt have become fixed upon this incident
of the debt, and the equitable principles in regard to the mort-
gage have become naturalized in the common law system.
when, therefore, the debt secured is in the form of a negotia-
ble note, a legal transfer of this carries with it the mortgage
security; and inasmuch as a negotiable promissory note by
the commercial law, when assigned for value before maturity,
passes to the assignee free of all equitable defenses to which it
was subject in the hands of the payee, it does not lose this
character which it has under the commercial law when it is
secured by a mortgage.    The mortgage rather is regarded
as following the note, and as taking the same character; and
it is the generally received doctrine that the assignee of a
mortgage securing a negotiable note, taking it in good faith
before maturity, takes it free from any equities existing be-
tween the original parties."

See, also, 27 Cyc. 1325; 20 Am. & Eng. Ency. Law (2d ed.),
1043.    The decision of this court in *Spencer v. Alki Point
Transp. Co.*, 53 Wash. 77, 101 Pac. 509, 132 Am. St. 1058,
seems to be in harmony with this view.

It appears that when Erickson and wife executed the
DeWees mortgage and this new mortgage on the land, they
had not acquired legal title thereto.    At that time they held
the land under a contract of purchase, having paid only a
part of the purchase price therefor.    Thereafter they com-
pleted payment of the purchase price and received a deed vest-
ing in them full legal title.    It is insisted that the mortgage
could in no event be any more than a charge upon the equitable
interest in the land possessed by Erickson and wife at the time
of its execution.    This involves the question of whether or not
the after-acquired title of Erickson and wife inured to the

benefit of the holder of the mortgage. The fact that the mortgage does not contain any express covenants of warranty of title seems to be relied upon in support of this contention. While it is true that there is no express warranty of title in the mortgage, its granting clause is much farther reaching in its effect than a mere quitclaim. It is, that Erickson and wife "do by these presents grant, bargain, sell, convey and confirm unto the party of the second part," etc. The only words of a grant necessary to constitute a bargain and sale deed under Rem. & Bal. Code, § 8748, are "bargain, sell and convey;" and by the provisions of that section, a deed containing such granting words, "shall be adjudged an express covenant to the grantee, his heirs or other legal representatives, to wit, that any grantor was seized of an indefeasible estate in fee simple, free from encumbrance, done or suffered from the grantor, except the rents and services that may be reserved, as also for quiet enjoyment against the grantor, his heirs and assigns." It is quite clear from the provisions of Rem. & Bal. Code, § 8765, that under such a deed an after-acquired title by the grantor inures to the benefit of the grantee. Under our decisions, the same rule applies as between mortgagor and mortgagee. *Osborn v. Scottish-American Co.*, 22 Wash. 83, 60 Pac. 49; *Weber v. Laidler*, 26 Wash. 144, 66 Pac. 400, 90 Am. St. 726; *Peoples Sav. Bank v. Lewis*, 37 Wash. 344, 79 Pac. 932; *Gough v. Center*, 57 Wash. 276, 106 Pac. 774; 1 Jones, Mortgages (6th ed.), § 679.

The note here sued upon appears to be endorsed by Gray "without recourse." This, it is argued, was such a restricted endorsement as to permit of equitable defenses as against respondent. The evidence, we think, clearly shows that, when the respondent received the notes, the endorsement of Gray threon did not contain the words "without recourse." But that, sometime thereafter, the notes were about to be sold to a prospective purchaser in Tacoma, with a view to applying the proceeds to Gray's indebtedness to respondent. Gray then

requested of respondent, and was permitted by it, to write over his endorsement the words "without recourse;" it being understood that such endorsement was only for the purpose of relieving Gray of personal liability, by reason of such endorsement, in the event the sale was consummated. The notes were thereupon sent to a Tacoma bank for the purpose of completing the sale, but it was not completed and the notes were returned to respondent. We think, under these circumstances, that this addition to the endorsements of Gray did not lessen the rights of respondent as to equitable defenses available to Erickson and wife against the notes.

It is insisted that the authority of Gray to transfer the original DeWees notes to respondent, by endorsing her name thereon as her agent, is not shown. Gray held a power of attorney from Mrs. DeWees which apparently gave him quite broad powers, though it may be doubted as to whether or not, standing alone, it was sufficient to authorize the transfer of these notes in this manner; but in view of the fact that Gray had made the loan, received the notes, and had possession thereof as agent for Mrs. DeWees, and in view of the fact that he was to some extent interested in the notes as owner, and his general course of dealing as the representative of Mrs. DeWees, we think, for the purpose of this case, his authority was sufficiently made to appear. It may be well doubted that this question has any relevancy to the matter here involved, since there is nothing to indicate that any apparent uncertainty as to Gray's power to make this endorsement would suggest to respondent that the notes were usurious.

The question of the priority between the lien of the mortgage and the lien of the judgment, upon which appellant Helgesen's title rests, seems to be clearly settled in respondent's favor by the decisions of this court. The notes and mortgages were given October 1st, and assigned to respondent about November 4th, while the judgment in favor of Helgesen was not rendered until December 4th. *Mann v. Young*, 1. W. T. 454; *Dawson v. McCarty*, 21 Wash. 314, 57 Pac. 816, 75

Am. St. 841; *Hacker v. White*, 22 Wash. 415, 60 Pac. 1114, 79 Am. St. 945; *Lee v. Wrixon*, 37 Wash. 47, 79 Pac. 489; *Hicks v. National Surety Co.*, 50 Wash. 16, 96 Pac. 515; *McDonald & Co. v. Johns, supra.*    Assuming, for the sake of argument, that the mortgage was given to secure a preexisting debt, and was also assigned with the notes as collateral security for another preexisting debt, the case last cited shows that the mortgage is nevertheless superior to the lien of the judgment upon which Helgesen's title rests, which judgment was rendered after the execution and assigning of the mortgage and notes.    Where two liens, at the date of their creation, secure preexisting debts, the respective dates of their creation determines their respective priority.

We have proceeded so far upon the assumption that the mortgage was in law executed by Mrs. Erickson as well as by her husband, notwithstanding she did not actually subscribe her name thereto.    Let us now inquire as to the correctness of that assumption.    We have seen that, on October 1, 1907, the mortgage was complete in every respect save as to subscription of Mrs. Erickson's name thereto; that her name then appeared in the body of the mortgage as grantor with that of her husband; that she actually acknowledged its signing and execution as though she had actually subscribed it; that she believed she had actually subscribed it with her own hand; and that the notary certified to her acknowledgment in usual and proper form.    This is not a question of some one signing her name to a mortgage for her, at her request, for it is plain from the evidence that she made no request of that nature.    Indeed, it may well be doubted that a voluntary conveyance or encumbrance of land can be lawfully signed by some one other than the grantor so as to bind the grantor by the mere signing alone, as our general statutes of frauds indicates may be done in making of contracts other than those affecting title to real property; Rem. & Bal. Code, § 5289; for Rem. & Bal. Code, § 8746, provides that deeds,

and this of course means mortgages, shall be "signed by the party bound thereby." There is here presented the question of adopting the mortgage as a whole, including the name in the body thereof, as her signature thereto, by Mrs. Erickson. Now the requisites for the execution of a deed or mortgage under our statutes are, (1) that it be in writing; (2) that it be signed (not subscribed) by the party bound thereby; and (3) that it be acknowledged by the party making it, before some person authorized to take acknowledgments. In this case there is no question as to the deed being in writing, nor as to its being acknowledged, but only as to it being signed. This court has held, in harmony with the general rule, that:

"It is a well established rule of law that a contract is signed, within the meaning of the statute, whether the name of the party to be charged appears at the bottom, top, middle or side of the paper." *Tingley v. Bellingham Bay Boom Co.*, 5 Wash. 644, 32 Pac. 737, 33 Pac. 1055; *Anderson v. Wallace Lum. Mfg. Co.*, 30 Wash. 147, 70 Pac. 247.

It follows that the mere fact that her name was not written at the foot of the mortgage, in the usual place for signing, does not conclusively show a want of lawful signature thereto. Had she written her name in the body of the mortgage, in her own hand, it clearly would have been a good signing of the mortgage by her. The question then is, was her acknowledgment of the execution of the mortgage after it was fully prepared, with her name written therein as grantor, equivalent in law to a signing of it by her. In the case of *Newton v. Emerson, Talcott & Co.*, 66 Tex. 142, 18 S. W. 348, the supreme court of Texas had under consideration a situation almost identical with that here involved. There the deed was not subscribed by the grantor, but was duly acknowledged, the grantor's name appearing in the body thereof as grantor. The court said:

"Under this state of facts it is unimportant that the entire instrument, including the name of Charles G. Newton, was written by another, at his request; nor is it important whether he was present when it was written; for, it is well settled that

by his acknowledgment before the officer he adopted and made his own, every word, including his own name, then upon the instrument.    By that act, and the delivery of the instrument, he declared and made his name or sign, then on the paper, the evidence of his intention in reference to giving it validity and effect, as fully as though the name had been written by himself. *Bartlett v. Drake,* 100 Mass. 175; *Clough v. Clough,* 73 Me. 488; *Nye v. Lowery,* 82 Ind. 320; *Willis v. Lewis,* 28 Tex. 180; *Adams v. Field,* 21 Vt. 267; *Armstrong v. Stovall,* 26 Miss. 282; *Pike v. Bacon,* 21 Me. 287; *Bird v. Decker,* 64 Me. 552.    It is to be regarded then as though entirely written by himself, for he declared that, as an entirety, it was his act; that he had signed and executed it."

The only difference we see between that case and this is the fact that the deed there appears to have been written at the request of the grantor, but it is apparent that that court regarded that fact as of no consequence, but rested the validity of the deed upon the ground of adoption of it by the grantor as his act.    *Loyd v. Oates,* 143 Ala. 231, 38 South. 1022, 111 Am. St. 39; *Harwell v. Zimmerman,* 157 Ala. 473, 47 South. 722; *Chivington v. Colorado Springs Co.,* 9 Colo. 597, 14 Pac. 212; *Gribben v. Clement,* 141 Iowa 144, 119 N. W. 596, 133 Am. St. 157; *Currier v. Clark,* 145 Iowa 613, 124 N. W. 622; *Northwestern Loan & Banking Co. v. Jonasen,* 11 S. D. 566, 79 N. W. 840; 9 Am. & Eng. Ency. Law (2d ed.), 145; 1 Cyc. 540.

This view of the law, we think, is particularly applicable to the execution of a deed or mortgage in the state of Washington, in view of the fact that, under Rem. & Bal. Code, § 8746, the acknowledgment of the execution of a deed or mortgage seems to be as much a necessary part of its execution as the signing.    Under this section, it is apparent that the acknowledgment has to do with the actual execution of the instrument rather than only for the purpose of entitling it to record, as was formerly, and is even yet in most states, the only purpose of an acknowledgment.    We are of the opinion that this mortgage was executed by Mrs. Erickson on October 1, 1907, not-

withstanding she did not then actually subscribe her name at the foot thereof.

Counsel for appellants place some reliance upon the fact that all of the written portion of this mortgage which includes Mrs. Erickson's name as one of the grantors (by the written portion we mean that portion other than the printed form used) was prepared and in the handwriting of Gray, the mortgagee; and it is insisted that therefore he could, in no event, be the agent of Mrs. Erickson for the purpose of writing her name in the mortgage, and thus in effect signing it for her. In support of this contention our attention is called to *Wingate v. Herschauer*, 42 Iowa 506; *Carlisle, Jones & Co. v. Campbell*, 76 Ala. 247; *Tull v. David*, 45 Mo. 444, 100 Am. Dec. 385, and other authorities supporting the view that a grantee cannot become the agent of the grantor for the purpose of signing the latter's name to a conveyance. These authorities seem to be applicable to and support that view, but we have seen that this is not a question of some one writing Mrs. Erickson's name in the mortgage as her signature, by virtue of her previous request or authorization, but it is a question of her adoption of the entire instrument as written, including her name written therein as grantor, after the instrument is complete in form. In such a case we think the authorities we have cited show that it is utterly immaterial by what means, or by whom, the instrument was physically brought into existence. By her adoption of it, to paraphrase the language in *Newton v. Emerson* above cited, "she made as her own, every word, including her name as grantor, then in the mortgage."

We find no error in the record, and conclude that the judgment must be affirmed. It is so ordered.

DUNBAR, C. J., and MOUNT, J., concur.

GOSE, J. (dissenting)—It appears from the majority opinion that Mrs. Erickson intended to sign the mortgage, and believed that she had done so until some time after the judgment

lien attached, when she actually signed it.    She did not intend
to adopt her name written by another as her signature.    This
is shown, I think, by the entire record.    Her failure to sign
the mortgage was due entirely to an inadvertence and over-
sight.    An intention to sign an instrument cannot be held
equivalent to an actual signing of the instrument.    If she in-
tended to sign her own name to the mortgage and failed to do
so by inadvertence, it would seem conclusive that she did not
intend to adopt her name written by another as her signature.
I think the judgment lien should be given precedence of the
mortgage.    To that extent I dissent from the view expressed
by the majority.

FULLERTON, J., concurs with GOSE, J.