POLLARD, Trustee, Plaintiff and Respondent, vs. TOBIN and others, Defendants and Respondents: MARSHALL & ILSLEY BANK, Cross-complainant and Appellant.

*February 10—May 9, 1933.*

For the appellant there was a brief by *William E. Hanecy* and *Upham, Black, Russell & Richardson,* and oral argument by *Clark M. Robertson,* all of Milwaukee.

*John H. Schlintz* and *Clarence P. Nett,* both of Milwaukee, for the respondents Elizabeth Tobin and others.

The following opinion was filed March 7, 1933:

FOWLER, J. The bank claims (1) that the bonds are negotiable and (2) that under the evidence they are holders thereof in due course and entitled to enforce them against the maker.

(1) The bonds are payable to bearer, and each is an unconditional promise to pay a sum certain in money, unless the provision below quoted renders the amount uncertain. Sec. 116.02, Stats. The provision, the clauses of which are numbered for convenience, is as follows: "(1) to which deed of trust reference is hereby made with the same effect as though recited at length herein, (2) for the description of

the property mortgaged, (3) the nature and extent of the security, (4) the rights of the holders of the bonds, and (5) the terms and conditions upon which the bonds are issued, held, and secured, and may (6) before their fixed maturities be declared at once due and payable, and the manner of prepayment before maturity."

The respondents claim that the above reference incorporates into the bonds the provisions of the trust deed obligating the makers of the bonds to pay the taxes on the property and the insurance premiums in addition to the amount specified in the bonds, and thereby renders the amount payable uncertain. As we construe the reference it does not effect such incorporation.

It is to be noted that giving to the provision its widest possible purport, it does not purport to incorporate the entire trust deed into the bonds. Assuming that the reference is sufficient to incorporate into the bonds a part of the trust deed, it only incorporates the parts thereof specifically mentioned. Those parts are indicated in the provision above quoted from the bond by clauses numbered (1) to (6) in the quotation. Clause (6), relating to the acceleration of the due date, does not render the bonds non-negotiable. Reference to the trust deed shows that the bonds may upon certain conditions and in a certain manner be declared due and payable at once. They are payable "at a fixed period after date . . . though payable before that time on a contingency," but this makes them payable "at a determinable future time" within sec. 116.02 (3) and sec. 116.08 (4), Stats. Clauses (2) and (3) manifestly do not affect negotiability. There is nothing in the trust deed relating to the "terms and conditions upon which the bonds were issued" that indicates that they were delivered to the Hackett Corporation without consideration or with any restrictions on their negotiability. On the contrary the trust deed recites that they were to be sold by the Hackett Corporation as soon

as possible after their delivery. Clause (5) therefore does not affect negotiability. Only clause (4) remains, which incorporates into the bonds the terms of the trust deed respecting "the rights of the holders of the bonds." Careful examination of the deed discloses that certain rights are expressly granted therein to the bondholders. The holders of twenty per cent. of the bonds may compel the trustee to accelerate the due date in case of defaults when the trustee does not himself exercise his option to do so; the holders of more than eighty per cent. of the bonds outstanding at any time may waive defaults in payment and extend the time of payment, subject to a certain proviso; and in case of resignation or removal of the trustee a new trustee may be chosen by the holders of a majority of the bonds outstanding. These are the only rights expressly granted to the bondholders. These being included, all others are excluded under the rule *"inclusio unius est exclusio alterius."* This rule also governs what parts of the deed are incorporated into the bonds. Certain provisions being expressly included, all others are excluded. We therefore hold that the bonds are negotiable.

(2) The bonds being negotiable, the bank holds them free from any defect of title of prior parties and free from defenses available between the maker and the Hackett Corporation, and may enforce payment in full if it is a holder in due course. Sec. 116.62. Sec. 116.57, Stats., provides that:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it; (5) that he took it in the usual course of business."

We consider that the evidentiary facts establish that the bank in accepting the bonds comes well within all of these conditions. They bear on their face all the marks of negotiable bonds. They were not due by their terms. Their payment had not been accelerated. Accepting the bonds as substitution for other collateral is payment of value. *American Savings Bank & Trust Co. v. Helgesen,* 64 Wash. 54, 116 Pac. 837. The bonds for which they were substituted were first class bonds and considered worth their face, and full value is *prima facie* evidence of good faith. There is no evidence of actual knowledge on the part of the bank of any infirmity in the bonds or any defect in the Hackett Corporation's title to them. Sec. 116.61 of the Negotiable Instruments statute is as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The trial court did not find bad faith and there is nothing in the evidence to support a finding of such evidentiary facts as to justify a finding that its action in taking the bonds amounted to bad faith. If we assume that there was a defect in the title of the bonds so that sec. 116.64, Stats., applies, and the burden was on the bank to prove that it is a holder in due course, the burden is fully met by the evidence.

It follows that the bank is entitled to judgment of foreclosure of the trust deed.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment in accordance with the opinion.

A motion for a rehearing was denied, with $25 costs, on May 9, 1933.