[No. 4777. Decided February 9, 1905.]

BARGAE O. LEE et al., Appellants, v. WILLIAM P. WRIXON, Respondent.[1]

VENDOR AND PURCHASER—FRAUDS, STATUTE OF—EXECUTION OF VERBAL PROMISE TO CONVEY LAND—PART PERFORMANCE—VESTING TITLE—ATTACHMENT. Where parents outfitted their son for Alaska, he being without means and in debt, and paid off his debts amounting to several hundred dollars, under the verbal promise that, if his venture was successful, he would, out of his first earnings, purchase and present them a farm for a permanent home, and in pursuance thereof, upon returning with $5,000, he purchased a farm, taking a deed in his own name, and placed his parents in possession, delivering them the deed, and agreeing to execute a deed to them, the transaction is' not a gift, but amounts to an executed contract of sale, with the purchase price paid, and there is such a part performance as to take the case out of the operation of the statute of frauds, and vest in the parents all except the bare legal title to the property, so that the same would not be subject to attachment for the debts of the son subsequently contracted.

EXECUTIONS—SALES—BONA FIDE PURCHASER. In this state an attaching creditor acquiring title to his debtor's realty is not a bona fide purchaser, and takes only the debtor's interest.

Appeal from a judgment of the superior court for Snohomish county, Joiner, J., entered April 29, 1903, upon

:Reported in 79 Pac. 489.

findings in favor of the defendant, after a trial on the merits before the court without a jury, dismissing an action to set aside a writ of attachment and to quiet title. Reversed.

*Fulton & Faben,* for appellants.

*Robert A. Hulbert,* for respondent.

FULLERTON, J.—The appellants are husband and wife, and the respondent is a creditor of their son, John B. Lee. In 1895 the appellants, together with their son, were residing in Snohomish county, in this state, upon a rented farm. They had at that time been within the county some fourteen years, all of the time residing upon rented property, not having been able to acquire a permanent home of their own. During the later years the son had worked on his own account, but without meeting with any success, his latest venture having been the purchase and operation of a hay press, which had but further increased his liabilities. In the year named the son desired to go to Alaska, in the hopes of bettering his fortune in the then newly discovered gold fields of that region, but, being in debt and without means, he was unable to procure the necessary outfit. He thereupon called upon his parents, the appellants, to take care of his debts, and procure him an outfit, promising them that, if he met with success in the venture, he would, out of his first earnings, purchase and present them with a permanent home. The appellants acceded to his request, and, at some sacrifice to themselves, outfitted him for his trip to the north, and assumed, and afterwards paid, his local debts, which amounted to several hundred dollars.

The son met with success, returning in the fall of 1898 with some five thousand dollars. His first act was to make good his promise. He purchased an improved farm in Snohomish county, containing about one hundred and

thirty-three acres, paying therefor, according to the recitals
in the deed, $4,350. He immediately placed the appel-
lants in possession of the property, and, after the deed had
been recorded, delivered that to his mother. The mother
noticed that the deed was in the son's name, and called his
attention to it, asking for a deed in the name of herself
and her husband. The son thereupon promised to deed it
over to them, but, as the mother testifies, in the hurry of
his preparations for returning to Alaska, he overlooked it.
On his return to Alaska the mother wrote him concerning
the deed, and received a reply to the effect that, if she
would prepare a form of deed for execution and send it to
him, he would execute and return it to her. This she did,
afterwards receiving it, properly executed.

This deed reached the appellants sometime in 1901. In
the meantime, however, the son had become involved in his
Alaskan ventures, and, with others, had become indebted to
the respondent in this case in the sum of $1,550. An ac-
tion was brought on this indebtedness in Snohomish coun-
ty, in February, 1901, in which an attachment was issued,
and levied upon the land above mentioned, as the property
of the son, prior to the execution and delivery of the deed
from the son to the appellants. A default judgment was
afterwards rendered against the son on a service by pub-
lication, and an order of sale entered directing the land
to be sold for the amount found to be due. A levy was
made under this order of sale, and the land duly adver-
tised, whereupon the appellants, learning of the same,
brought this action to restrain the sale, and to have the
judgment and order of sale set aside. Issue was taken
upon the allegations of the complaint, and a trial had, re-
sulting in a judgment for the respondent, the trial judge
holding that the land was the property of the son, and sub-
ject to sale on execution for the satisfaction of his debts.

In so ruling, we think the learned trial judge erred. The transaction on the son's part was not a mere attempt to make a gift to the appellants. Although the contract was so indefinite as not to be enforceable according to its terms, even had it been in writing and signed by the party to be bound thereby, yet the transaction itself was not one from which no legal obligation whatsoever would arise. On the contrary, the fact that the appellants, at the special request of the son, furnished him with his outfit for his northern venture, and subsequently paid his debts, with the expectation of being remunerated for it, created an implied obligation on the son's part to reimburse them for the money expended, and to pay the reasonable value of their services. When, therefore, the son purchased the farm in question, proffered it to the appellants in satisfaction of this obligation, and they accepted it as such, and entered into possession of it, the transaction was more than a gift; it was a sale of land for a valuable consideration, in which the transaction was so far completed that the purchase price had been paid, and delivery of possession made. Under all the authorities, this is a sufficient part performance of an oral contract to convey lands to take the same out of the statute of frauds. 26 Am. & Eng. Enc. Law (2 ed.), p. 55. And, this being so, it must follow that the appellants had an equitable title to the property the moment they entered into its possession—a title that the courts would change into a legal one by compelling the son to execute a deed conveying it to them.

A creditor who acquires title to his debtor's real property by attachment and sale on execution is not, in this state, a *bona fide* purchaser. He parts with no consideration on account of his purchase, and consequently takes only such interest as the debtor has therein. *Scott* v. *McGraw*, 3 Wash. 675, 29 Pac. 260; *Elwood* v. *Stewart*, 5

Wash. 736, 32 Pac. 735; *Benney* v. *Clein,* 15 Wash. 581, 46 Pac. 1037; *Dawson* v. *McCarty,* 21 Wash. 314, 57 Pac. 816, 75 Am. St. 841; *Hacker* v. *White,* 22 Wash. 415, 60 Pac. 1114, 79 Am. St. 945.

As we have shown, John B. Lee, the respondent's judgment debtor, had no beneficial interest in this property whatsoever, at the time the respondent made his levy thereon. He had only the bare legal title, which, uncoupled with a beneficial interest, is not subject to execution. The attempted sale of the land, therefore, by the respondent could do no more than cast a cloud upon the appellants' title, and they were entitled to have the sale enjoined.

The judgment of the lower court is reversed, and the cause remanded, with instructions to enter a judgment in accordance with the first, second, and fourth paragraphs of the complaint.

MOUNT, C. J., HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.