In re Wilton B. JACKSON, Janet G. Jackson, and Walter B. Jackson, t/a Greenbank Farm, a partnership, Debtors.

In re Wilton B. JACKSON and Janet G. Jackson, h/w, individually and as partners in Greenbank Farm, Debtors.

Bankruptcy Nos. 81–00396, 81–04010.

United States Bankruptcy Court, E.D. Pennsylvania.

March 28, 1983.

Mark Yoder, Reading, Pa., for debtors.

Samuel G. Weiss, Lebanon, Pa., for Lancaster Production Credit Ass'n.

Barry A. Solodky, Lancaster, Pa., trustee.

Alexander Henderson, III, Lancaster, Pa., for trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

These cases are presently before the Court based upon a document captioned: "APPLICATION FOR JOINT ADMINISTRATION, SATISFACTION OF SEC. 341, RETROACTIVE EFFECTIVE DATE, ADMINISTRATIVE EXPENSE PRIORITY, AND TURNOVER OF FUNDS TO DEBTORS" (hereinafter "Omnibus Application"). This Omnibus Application was filed under both of the above case numbers by debtors Wilton B. Jackson and Janet G. Jackson, who are husband and wife. For the reasons hereinafter given, the Omnibus Application shall be denied in all respects.[1]

Before even framing the issues pertaining to the Omnibus Application, it will be necessary to summarize the rather complex and entangled procedural history of these cases.

On February 4, 1981, the Voluntary Petition and accompanying documents in Case No. 81–00396 (hereinafter "Case 396") were filed in this Court under Chapter 11 of the Bankruptcy Code. Walter B. Jackson is the adult son of Wilton B. Jackson and Janet G. Jackson. The term "Greenbank Farm" refers to the alleged business partnership among the three above-named Jacksons. The Case 396 filing purported to be a partnership filing rather than an individual or joint filing by any or all of the three Jacksons named in the Case 396 caption. In this regard, the documents filed in connection with Case 396 were far from a model of clarity and such lack of clarity has been at the core of some of the disputes in these cases.

On March 13, 1981, a liquidating Plan of Reorganization was filed in Case 396 on behalf of the partnership by the alleged

---

1. This Opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

partnership's counsel. No Plan was ever confirmed. On July 29, 1981, the first meeting of creditors in Case 396 was held and concluded, at which the three above-named Jacksons testified.

On August 20, 1981, we entered Orders authorizing the substitution of counsel for the alleged partnership in Case 396.

Case 396 was voluntarily converted from a Chapter 11 proceeding to a Chapter 7 proceeding on September 28, 1981.

On September 30, 1981, the Voluntary Petition and accompanying documents in Case No. 81–04010 (hereinafter "Case 401") were filed in the Court under Chapter 7 of the Bankruptcy Code. This Case 401 filing was clearly delineated and structured as a joint filing by Wilton B. Jackson and Janet G. Jackson as husband and wife.

On October 13, 1981, in Case 396, counsel for the alleged partnership filed a document captioned: "AMENDMENTS TO SCHEDULES IN BANKRUPTCY REFLECTING THAT THE ONLY DEBTOR PROPERLY THE SUBJECT OF NO. 81–00396 IS THE PARTNERSHIP, GREENBANK FARM. REFERENCES ARE MADE THROUGHOUT TO NO. 81–04010, THE PERSONAL CHAPTER 7 PETITION OF WILTON B. AND JANET G. JACKSON". These amendments essentially deleted from the Schedules of Case 396 all of the personal assets, liabilities, and exemptions of Wilton B. Jackson, Janet G. Jackson, and Walter B. Jackson.

On November 10, 1981, Walter B. Jackson and his wife, Carol E. Jackson, filed in this Court a voluntary joint petition under Chapter 7 of the Bankruptcy Code, which was assigned Case No. 81–04615. However, the Omnibus Application does not directly pertain to Case No. 81–04615.

The Omnibus Application itself was filed on November 13, 1981. It has been opposed by the Trustee, who is the same individual for both Case 396 and Case 401, and by the Lancaster Production Credit Association (hereinafter "LPCA"), a major secured creditor scheduled in both Case 396 and Case 401. The hearing on the Omnibus Application resulted in extensive testimony on five separate hearing dates. concluding on August 24, 1982. Subsequently, briefs were filed by the debtors, the Trustee, and the LPCA.

The Omnibus Application contains five counts. We shall briefly explain each count. Count 1 (Joint Administration) states that Case 396 was a valid filing for only the partnership, Greenbank Farm, and not for any of the three Jacksons listed in the Case 396 caption. Therefore, Case 396 and Case 401 are proper cases for joint administration pursuant to Rule 117 of the Rules of Bankruptcy Procedure.

Count 2 (Satisfaction of Sec. 341) states that all three Jacksons testified at the Case 396 first meeting of creditors on July 29, 1981. Count 2 further states:

"Since the personal debts and assets of Wilton B. Jackson and Janet G. Jackson appeared on the schedules to No. 81–00396, the debtors aver that their answers in any subsequent 341 meeting would be consistent with the answers given on July 29 and that there appears to be no reason to schedule another Section 341 first meeting in No. 81–04010."

Count 3 (Retroactive Effective Date) requests that the effective date of Case 401 be deemed to be February 4, 1981, the date of the filing of Case 396. Count 3 contends that Wilton and Janet Jackson filed Case 401 in order to be assured of "their personal discharge of partnership indebtedness. . . ." It also contends that they had intended that they obtain a personal discharge in bankruptcy and believed that they would obtain a personal discharge by means of the Case 396 filing. Count 3 further contends that all parties in interest in Case 396 conducted themselves as if the automatic stay was in effect as to the Jacksons' individual property and debts since February 4, 1981, the date of the Case 396 filing.

Count 4 (Administrative Expense Priority) essentially states that from February 4, 1981 through September 30, 1981, Wilton B. Jackson advanced specific sums from his personal earnings in order to protect and preserve equipment, livestock, and real

property, all of which constituted property of either Greenbank Farm or the Jacksons personally. Count 4 goes on to state that prior to expending such sums, the Jacksons were assured by their prior counsel that those expenditures would be recoverable as administrative expenses. Therefore, Count 4 requests that such expenditures be found to constitute administrative expenses under Section 503(b)(1)(A) of the Bankruptcy Code, 11 U.S.C. § 503(b)(1)(A).

Count 5 (Turnover of Funds to Debtors) states that on June 24, 1981, prior counsel for the debtors agreed with counsel for the LPCA, in settlement of an adversary proceeding brought by the LPCA in Case 396, that the Jacksons or Greenbank Farm would, among other things, pay the sum of $2,750.00 per month to the LPCA. For various reasons, Count 5 alleges that the above mentioned agreement between counsel was not and is not legally binding upon the Jacksons or Greenbank Farm. However, on the advice of prior counsel, Wilton B. Jackson, from his current earnings, made the payments of $2,750.00 for the months of July, August and September 1981. The July payment was made directly to the LPCA. The August and September payments are currently being held in an escrow account by the counsel for the Official Committee of Unsecured Creditors in Case 396. Count 5 concludes by contending that the three $2,750.00 payments:

"... represent money properly payable to Wilton B. Jackson in partial compensation for sums he spent in preservation of the Greenbank Farm estate. Furthermore, since the effective date of the Jacksons' personal bankruptcy should be deemed to be February 4, 1981, and since Mr. Jackson's administrative expenses were paid out of personal earnings since February 4, 1981, upon return of the escrow fund and July payment to Mr. Jackson, that money should be deemed not property of his personal bankruptcy estate."

Our consideration of the merits of the debtors' Omnibus Application must begin with our determination of the nature of the Case 396 filing. As stated *supra,* the Case 396 filing purported to be a partnership filing, with Greenbank Farm as the partnership and with the three Jacksons named in the caption as the partners. However, in the documents filed in Case 396 on February 4, 1981, the individual assets, liabilities, and exemptions [2] of the three Jacksons were listed, much as they would be in an individual bankruptcy. In fact, the individual assets, liabilities, and exemptions of Walter B. Jackson are listed completely separately from the main Schedules of the Case 396 Petition. In the main Schedules, the personal assets and liabilities of Wilton and Janet Jackson are not distinguished from the assets and liabilities of the alleged partnership. Furthermore, all three Jacksons believed that their individual assets were protected by the automatic stay as a result of the Case 396 filing. Their individual creditors also acted as if the automatic stay protected their individual assets. In addition, even the caption of Case 396 is ambiguous as to whether or not a partnership filing was intended.

Based upon these factors alone, we would be inclined to view Case 396 as a joint and/or individual rather than a partnership case. However, a fundamental issue which we must still address is whether or not a partnership known as Greenbank Farm ever existed among the three Jacksons.

The Bankruptcy Code does not define the term "partnership". Therefore, we shall look to Pennsylvania law to determine its meaning. Pennsylvania, like most states, has adopted the Uniform Partnership Act, wherein a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." 59 Pa.C.S.A. § 311(a). According to Pennsylvania case law, a partnership is created by a contract, express or implied. The partnership agreement need not be in writing, but, whether in writing or not, or whether express or implied, must be composed of the clear, mutual assent on the part of two or

---

**2.** Of course, such exemptions are not available in a partnership bankruptcy.

more persons. *Murphy v. Burke,* 454 Pa. 391, 395, 311 A.2d 904 (1973). The burden of proof lies with the party or parties seeking to prove the existence of a partnership. *Zuback v. Bakmaz,* 346 Pa. 279, 282, 29 A.2d 473 (1943); Fed.R.Evid. 302.

In the present cases, the three Jacksons testified extensively and all claimed that a partnership existed among the three of them in an essentially hog-farming operation known as Greenbank Farm. It is undisputed that no written partnership agreement ever existed.

After reviewing the voluminous evidence in these cases, we are convinced that the only truly significant evidence of the possible existence of a partnership was the Jacksons' own testimony to that effect. While such testimony can, under some circumstances, be sufficient to prove the existence of a partnership, we find that it is not sufficient in the present cases. We find lacking in their testimony the clear, mutual assent necessary to create either an express or implied partnership agreement. With regard to the possibility of an express oral partnership agreement, the alleged agreement, according to the Jacksons' testimony, appeared to contain a proviso that the profits and losses from the hog-farming operation be shared equally between Wilton and Janet Jackson, on the one hand, and Walter Jackson, on the other hand. Yet, all of the losses were absorbed by Wilton and Janet Jackson, and there were never any profits. Other than this alleged proviso regarding the division of profits and losses, the alleged oral partnership agreement contained no other elements of any specificity whatsoever. Instead, there was rather vague testimony from all three Jacksons about the sharing of assets and labor and about using the alleged partnership as a method for helping Walter Jackson to get started in farming. In addition, we find it important that none of the three Jacksons could even agree as to when the alleged partnership was formed. Janet Jackson initially testified that the partnership was formed in 1977 to 1978. She later testified that it was formed in 1977 or 1975. Walter Jackson testified that the partnership was formed in 1974, but later testified that it was formed in 1970. Wilton Jackson testified that the partnership was formed in 1975. Also of significance to us is the fact that Walter Jackson testified that his wife, Carol Jackson, was a member of the partnership, whereas his parents testified that she was not a member.

Based upon the foregoing, we must conclude that the clear, mutual assent necessary to create a partnership under Pennsylvania law was not contained in the verbal representations made among the three Jacksons, even accepting as credible all of their testimony. The alleged oral partnership agreement among them contained too many vagaries and contradictions to rise to the level of the creation of a partnership under Pennsylvania law, and the Jacksons have failed to sustain their burden of proof in this regard.

We also find that a partnership agreement among the Jacksons cannot be implied from the conduct of the parties and the surrounding circumstances. On the contrary, the objective evidence in this regard overwhelmingly indicates that no partnership existed.[3] We note that the Jacksons' arguments properly focused upon their attempt to establish that there was an express partnership agreement rather than an implied partnership agreement.

---

**3.** For example, among other things, no partnership tax returns were ever filed until after the debtors filed bankruptcy, and the 1978 through 1980 tax returns of Wilton and Janet Jackson list them as "proprietors" of a farming operation and not as members of a partnership. All of the losses of the alleged partnership were claimed on the tax returns of Wilton and Janet Jackson, as were tax credits and depreciation on the alleged partnership's farm machinery and hogs. The employer identification number for tax purposes was in the name of Wilton and Janet Jackson and not in the name of Greenbank Farm. Also, the debtors never filed a fictitious name certificate for the name "Greenbank Farm", as would be required under Pennsylvania law if such a partnership existed. Furthermore, it appears that the debtors never gave a partnership financial statement to any creditor.

**564**

■ Having determined that no partnership existed among the Jacksons, it obviously follows that Case 396 was not a partnership filing. It should also be noted that, according to Section 302 of the Bankruptcy Code, 11 U.S.C. § 302, joint cases may be filed only by spouses. Therefore, Walter Jackson cannot file jointly with his parents. As alluded to *supra,* the Case 396 filing had the essential facts and characteristics necessary for a joint Chapter 11 filing by Wilton and Janet Jackson and an individual Chapter 11 filing by Walter Jackson. Furthermore, we again note that the Jacksons and their creditors treated the Case 396 filing basically in that manner. Therefore, we determine that the Case 396 filing was, in essence, a joint Chapter 11 filing by Wilton and Janet Jackson and an individual Chapter 11 filing by Walter Jackson. In that the aforementioned § 302 of the Code prevents such a result, we shall deem Walter Jackson's individual Chapter 11 filing on February 4, 1981 to be a separate filing from the joint Chapter 11 filing by his parents on the same date. Our power to do so is the general power granted to Bankruptcy Courts by Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a). In addition, the conversion of Case 396 from Chapter 11 to Chapter 7 on September 28, 1981 shall be deemed to apply both to the filing of Wilton and Janet Jackson and to the filing of Walter Jackson.

Having so decided, we must next conclude that the joint Chapter 7 filing in Case 401 by Wilton and Janet Jackson on September 30, 1981 was merely duplicative of their Case 396 filing, inasmuch as their Case 396 filing had already been converted to Chapter 7 on September 28, 1981. Therefore, we shall dismiss Case 401 as duplicative of Case 396. We are, of course, aware that the aforementioned Case 396 amendments of October 13, 1981 essentially deleted from the Schedules of Case 396 all of the personal assets, liabilities, and exemptions of Wilton and Janet Jackson in that they all were then present in Case 401. Therefore, in light of our dismissal of Case 401, we shall now order counsel for Wilton and Janet Jackson to make corrective amendments to the Case 396 Schedules in conformity with this Opinion within thirty days from today.

We are now prepared to turn to the merits of the Omnibus Application.

Count 1 (Joint Administration) must, of course, be denied as moot in that we have dismissed Case 401.

Count 2 (Satisfaction of Sec. 341) must also be denied as moot for the same reason.

Count 3 (Retroactive Effective Date) must also be denied as moot for the same reason.

Count 4 (Administrative Expense Priority) and Count 5 (Turnover of Funds to Debtors) must also both be denied in that, by their own terms and by the debtors' own admission, neither Count 4 nor Count 5 can succeed if Count 3 fails.

However, with regard to Count 5, we shall direct the counsel for the Official Committee of Unsecured Creditors in Case 396 to deliver the aforementioned escrowed $5,500.00 to the Trustee in Case 396. Said Trustee shall retain the $5,500.00 in a separate account pending further Order of the Court.