In re Ronda Lee TANNER, Debtor.

Robert E. WISWALL, Trustee of the Bankruptcy Estate of Ronda Lee Tanner, Plaintiff,

v.

Ronda Lee TANNER, a single person; Debra A. Russell, a single person; Irwin J. Hopkins and Edna L. Hopkins, husband and wife; Edna L. Hopkins Barnes, as her separate estate; Sandra Celestine Sturdevant, as her separate estate; Betty Ruth Stewart, as her separate estate; Clara Lee Northrup, as her separate estate; Mona Lisa Luse, as her separate estate; and Clark County Treasurer's Office, Defendants.

No. 91–32954.
Adv. No. 91–34711.

United States Bankruptcy Court, W.D. Washington.

Sept. 30, 1992.

Jeffrey A. Meehan, Landerholm, Memo-
vich, Lansverk & Whitesides, Inc., P.S.,
Vancouver, Wash., for plaintiff/trustee.

John F. Nichols, Nichols, Lane & Marshall, Vancouver, Wash., for defendant Tanner.

## DECISION AND ORDER: SUMMARY JUDGMENT

PHILIP H. BRANDT, Bankruptcy Judge.

The trustee seeks in this action to set aside as preferential or fraudulent the Debtor's quit claim to Defendant Debra Russell, her former lesbian lover and tenant in common, of an undivided one-half interest in the house in which they had lived together. · The deed was given more than 90 days before the petition, but recorded within that period. Debtor and the other defendants, who have record interest in the property, have defaulted, and the trustee has moved for summary judgment against Russell.

### I. ISSUES

The motion presents the following questions:

A. Whether, under Washington law, a co-tenant in possession of real property must record a quit claim deed from the other co-tenant to prevail against a lien or judgment creditor, or a bonafide purchaser, with respect to the other co-tenant's former interest; and, if not

B. Whether a co-tenant is a general partner, and thus an "insider" subject to a one year preference period of § 547(b)(4)(B) of the Bankruptcy Code [1];

C. Whether the Debtor's former partner in a long term homosexual relationship is an "insider" under § 101(31), and therefore subject to the one year preference period; and

D. Whether Debtor's conveyance to her co-tenant was fraudulent under § 548.

The trustee also seeks, in the event he prevails upon either cause of action, sale of the entire purchaser's interest free and clear of liens under § 363(f) and (h), and post-petition rent from Russell, at the rate of one-half of the fair market rental value of the property.

### II. BACKGROUND

A. *History:* Debtor and Russell met in late 1985 in California, and, in December of that year or January 1986, began living together in an intimate homosexual relationship. On St. Valentine's Day, 1986, they took part in a ceremony in which they exchanged vows and made life-long commitments to each other. In November 1986 they moved together to Vancouver, Washington, and purchased the residence here at issue on real estate contract, making a down payment of $10,000 with the proceeds of an unsecured loan from Russell's father. The real estate contract, executed 19 December and recorded 22 December 1986, identifies the Buyer as "Ronda L. Tanner, a single woman, and Debra A. Russell, a single woman", creating a tenancy in common. RCW 64.28.020.

Tanner and Russell lived together in the house, with each contributing to make payments and sharing expenses. However, the relationship between them deteriorated and Russell, the more forceful of the pair, "threw out" Debtor four times. Debtor returned three times, but, as Russell had destroyed some of her property and threatened her, Debtor stayed out the fourth time, in December of 1990.

By Russell's calculation, Debtor owed her $18,000 to $20,000 for credit card charges and failures to make contributions or rent payments. Russell indicated she would forgive the debt in return for a deed to Debtor's interest in the house: Debtor refused. Thereafter, Russell hounded, humiliated, and pressured Debtor into signing a quit claim deed on 30 March 1991. Debtor's Affidavit concludes:

---

**1.** 11 U.S.C.: references to "§", "Section" or to "Chapter", without more, are to the Bankruptcy Code.

At the time I signed the deed, I did not feel my act was voluntary in any sense of the word. I could not afford to retain an attorney, and the police were unable to help. I simply had no other options.

The deed was recorded 20 May 1991, and Debtor filed for relief under Chapter 7 on 10 July 1991. The trustee alleges, and the Debtor's schedules support, that Debtor was insolvent on 30 March 1991.

Russell does not controvert the trustee's description of the history of the relationship, set forth in Debtor's Affidavit and deposition transcripts submitted in support of his motion. Rather, Russell focuses on the financial relationship: in her view, she purchased the residence, and had Debtor's name put on the title because they "... had established a relationship and been intimate ...". She acknowledges that Debtor contributed half of the monthly payments, taxes, and insurance through June of 1990, but considered the house her separate property, and viewed Debtor's contributions as rent.

Nor does Russell controvert the trustee's and Debtor's allegations regarding the circumstances surrounding the giving of the deed. She does acknowledge, essentially, that she took the quit claim as payment, and indicates that Debtor typed up and executed a "release", at the same time and before a notary, referencing the quit claim deed, releasing [her interest in] a 1973 17-foot boat, and promising to pay a department store. Russell further avers that the relationship between Debtor and her had, by the end of 1990, become only a business relationship.

Russell states she was unaware of any financial problems Debtor might have had in March of 1991, but she does not challenge the trustee's contention of insolvency.

Finally, neither party submitted any evidence respecting claims of other creditors, which would affect amount Russell would receive in a Chapter 7.

B. *Value; Partition:* The trustee submitted the opinion of Fred Butcher, a realtor and appraiser, that the property has a current fair market value between $62,000 and $65,000. The contract balance, as of Debtor's petition, was approximately $12,500. Mr. Butcher believes partition impracticable, if not impossible, and that sale of an undivided half interest under the real estate contract would bring a significantly discounted price. He also states that the property is not of the types precluded from sale by § 363(h)(4).

Ms. Russell has submitted no controverting evidence on these points, or which would indicate that the hardship to her from a sale would exceed the benefit to the estate.

### III. JURISDICTION

This is a core proceeding and this Court has jurisdiction. 28 U.S.C. §§ 157(b)(2)(F), (H), (K), and (N) and 1334; GR 7, Local Rules W.D.Wash.

### IV. PREFERENCE: PERFECTION

To avoid the deed as a preference, the trustee must establish that it was made on an account of antecedent debt while Debtor was insolvent, that it enabled Russell to obtain more than she would otherwise get in a Chapter 7 liquidation, and that the transfer was not good against a bonafide purchaser or lien or judgment creditor until within 90 days of the petition date, unless Russell was an insider, in which event the transfer is avoidable if made within one year. Section 547(b). The debtor is presumed insolvent during the 90 days preceding filing; there is no presumption before that date. Section 547(f).

■ A. *Tracing:* Russell's fundamental defense to the trustee's preference attack is that she owns the house, under Washington's tracing or source doctrine, *see* H. Cross, *The Community Property Law in Washington,* 61 Wash.L.Rev. 13, 55–63 (1985). That analysis, employed by Washington courts to determine the separate and community character of assets held in marital or meretricious relationships, is helpful in this instance only to determine, as between Debtor and Russell, who owns what or how much, assuming that Wash-

ington courts would apply it in the relationship in question.

Ms. Russell cites no authority for the proposition that a person whom tracing gives equitable title as against the other party would prevail against a lien or judgment creditor or a bonafide purchaser. That is necessary, because the trustee has those attributes under the strong-arm clause, § 544(a).

■ B. *Against BFP:* The trustee argues recording is necessary to perfect the transfer made by the 30 March 1991 quit claim deed. Since that recording was within 90 days of filing, the trustee argues that he need not show Ms. Russell an insider to set aside the transfer as preferential. Ms. Russell responds that her possession was notice to all of all rights she claims, citing *Glaser v. Holdorf,* 56 Wash.2d 204, 352 P.2d 212 (1960), and that one who has notice of another's claim of right or equity prior to acquiring title cannot be a bonafide purchaser, citing *Miebach v. Colasurdo,* 102 Wash.2d 170, 685 P.2d 1074 (1984).

Professor Powell, discussing inquiry notice, states:

> A major exception to the inference of notice from possession arises where that possession is consistent with the recorded title. For example, two person, A and B, may be tenants in common of a parcel of property, but A is the only one who is in possession. That tenancy in common is evidenced by a recorded deed to the two of them. A's possession is not considered to put a prospective purchaser of B's interest on inquiry notice of the fact that B had previously conveyed that interest to A by a deed which is unrecorded. The reason for this conclusion is that A's possession is not inconsistent with the tenancy in common disclosed in the recorded deed. Since one tenant in common may, consistent with his title, have possession of the entire premises in absence of the other tenant, his sole possession is not such a curious or suspicious fact as should lead the purchaser to make an inquiry.

6A R. Powell, *The Law of Real Property,* ¶ 905, at 82–54 (P. Rohan, rev. ed., 1992),

citing *Rehm v. Reilly,* 161 Wash. 418, 297 P. 147 (1931).

In *Rehm v. Reilly,* also reported at 74 A.L.R. 350, the Washington Supreme Court held in a dispute between a bonafide purchaser and a lessee in possession of property that the purchaser, knowing of the lease, had no duty to inquire and obtained good title, notwithstanding the lessee's unrecorded quit claim deed. *See also* the following Annotation, *Possession of Real Property as Notice of Diverse Co–Existent Interest of Possessor,* 74 A.L.R. 355, and the Annotation: *The Possession of Land by Co–Tenant After Acquisition of Interest of Other Co–Tenant as Notice to Subsequent Purchaser From or Creditor or Latter,* 162 A.L.R. 209 (1945).

Taking Powell's characterization of *Rehm v. Reilly* as supporting the principle quoted above as accurate, it is apparently not now the law of Washington. Three years later, the Washington Supreme Court decided *Nichols v. DeBritz,* 178 Wash. 375, 35 P.2d 29 (1934), holding that the former lessee in possession (as purchaser under an unrecorded real estate contract) at the time respondent's mortgage was recorded had the superior rights, stating:

> The purchaser in such cases takes title subject to every right of the occupant that a reasonable inquiry would have disclosed. This rule applies as well to the nature of the tenure as to the quantity of land claimed by the party in possession.

178 Wash. at 380, 35 P.2d 29.

Although Division II of the Court of Appeals, citing *Rehm v. Reilly* but not *Nichols v. DeBritz,* held a bonafide purchaser whose conveyance was first recorded had the prior right over a tenant in possession holding a previously executed but subsequently recorded deed, *Scott v. Woolard,* 12 Wash.App. 109, 529 P.2d 30 (1974), the same court later upheld, in an unlawful detainer action, the rights of a lessee in possession under an unrecorded 20 year lease as against the foreclosing institution which had purchased at its own foreclosure sale. *Peoples Bank v. Birney's Enterprises, Inc.,* 54 Wash.App. 668, 775 P.2d 466 (1989).

The Washington Supreme Court has not considered this issue since the *Peoples Bank* case. Russell's unrecorded quit claim would prevail over a bonafide purchaser.

■ C. *Against Lien or Judgment Creditor:* Likewise, Russell's deed trumps the trustee's powers as a lien or judgment creditor: first, a judgment creditor takes only the interest of the judgment debtor, and does not rely on record title, *Lee v. Wrixon,* 37 Wash. 47, 79 P. 489 (1905); *Aberdeen Federal v. Empire Homes,* 36 Wash.App. 81, 672 P.2d 409 (1983), *rev. den.* 100 Wash.2d 1041 (1984), and second, perhaps, via a tracing analysis: see part IV A, above.

Because, as between them, Debtor's deed to Russell was effective when delivered, and because Russell's possession of the house was notice of all interests she claimed, the date of execution and delivery of the quit claim deed is determinative in the preference analysis. It is therefore necessary to decide whether Russell is an insider subject to the one year preference period.

## V. PREFERENCE: INSIDER

A. *Definition:* Section 101(31) provides, in pertinent part:

"insider" includes—

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor; ...

(iii) general partner of the debtor; ...

As noted by the Bankruptcy Appellate Panel:

... the definition of insider is subject to 11 U.S.C. section 102(3) which states that the terms "includes" and "including" are not limiting. Thus, the courts have widely agreed that Congress did not intend to limit the classification of insiders to the statutory definition. *See, e.g., In re Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206, 210 (5th Cir.1983) (the "[u]se of the word 'includes' in section 101(25) [currently section 101(31)] evidences Congress' expansive view of the scope of the insider class, suggesting

that the statutory definition is not limiting and must be flexibly applied on a case-by-case basis.")

According to the legislative history, an insider is "one who has a sufficiently close relationship with a debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." The tests developed by the courts in determining who is an insider focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor.... a transferee "is an insider if, as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arms-length."

*In re Schuman,* 81 B.R. 583, 586 (9th Cir. BAP 1987) (citations omitted).

There are three ways in which Russell might be classified an "insider":

first, if her tenancy in common with Debtor was, for bankruptcy purposes, a general partnership;

second, if the "business relationship", as Russell characterizes the latter stages of her living situation with Debtor, was a general partnership; or

third, because of her intimate relationship with Debtor.

■ B. *As Co–Tenant or Partner:* The parties did not brief or argue the question of whether a tenancy in common is a partnership for bankruptcy purposes. The joint ownership aspect, and the concurrent rights of co-tenants to possess property held in common, suggest it might be, while the inability of a co-tenant to convey or subject to execution another co-tenant's interest, and a co-tenant's right to occupy property held in common with no liability for rent to co-tenants absent ouster, suggest it is not.

RCW 25.04.070 provides that a tenancy in common, whether or not the co-owners share in profits, does not itself establish the existence of a partnership. Although the Ninth Circuit suggested in *U.S. v. State of Washington,* 520 F.2d 676, at 685 (1975), *cert. den.* 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97, *rev. den.* 424 U.S. 978,

96 S.Ct. 1487, 47 L.Ed.2d 750 (1976), that co-tenants have a fiduciary relationship to each other, no reported Washington decision goes so far.

The limited nature of the tenancy in common relationship does not necessarily entail the ability to influence or control which are the marks of insider status. *Compare*, RCW 25.04.090–150, respecting the duties and powers of partners, with paragraphs 603 and 604 of *Powell on Real Property*, Vol. 4A at pp. 50–14 through 50–29.

The bare legal relationship of co-tenancy is not enough to make Russell an insider. The business relationship could be, but neither party has submitted evidence on these points. I cannot, therefore, conclude either of these relationships made Russell an insider.

■ C. *Intimate Relationship:* Taking the invitation implicit in Congress' use of "... includes ..." in the definition, Bankruptcy Courts have found:

— the parents of a debtor's live-in fiance, *Matter of Montanino*, 15 B.R. 307 (Bkrtcy., D.N.J., 1981);

— the parents of a debtor's deceased wife, *In re Ribcke*, 64 B.R. 663 (Bkrtcy., D.Md.1986);

— a good friend who had made numerous informal loans to a debtor, *In re O'Connell*, 119 B.R. 311 (Bkrtcy., M.D.Fla.1990); and

— a corporate debtor's president's ex-brother-in-law, respecting a transfer five years after the transferee's divorce from debtor's president's sister, *In re Standard Stores, Inc.*, 124 B.R. 318 (Bkrtcy., C.D.Cal.1991)

within the meaning of "insider". In the *Standard Stores* case, Judge Zurzolo looked at the transaction in question, as well as the relationship between the debtor and the transferee, and relied in part on his finding that transaction was not at arms length in concluding the transferee was an insider.

In this case, Russell's relationship with Debtor was literally not at arms length for some years, was intended by both parties to approximate a marital situation, and was marked ceremonially for that purpose. As the ceremonial aspect was extra-legal, there was no proceeding of record to terminate the relationship. The first indication of that termination to the world at large was Debtor's staying out of the house in December of 1990.

Russell and Tanner were sufficiently close (whether intimate or, at times, hostile) to warrant additional scrutiny of their transactions: because of their previous intimate relationship, and their cohabitation until shortly before the transfer, and because their dealings after Tanner moved out were not on an arm's length business basis. Russell could, and, it is unrebutted, did exert influence and control over Debtor, and was an insider in fact.

D. *Elements:* A transfer to or for the benefit of the creditor made while the debtor was insolvent within the preference period on account of an antecedent debt is preferential to the extent it enables the creditor to receive more than she would in a case under Chapter 7 had the transfer not been made, and the creditor received payment in accordance with the Bankruptcy Code. Section 547(b). The trustee's evidence that Tanner was insolvent on the date of the quit claim deed, or became so as a result of the transfer to Russell, is uncontroverted, as is his evidence that her interest in the house was Tanner's only nonexempt asset. The first four elements of the preference have been established.

However, the trustee has not established the last element: what would Russell have received as a creditor in a Chapter 7, absent the transfer? Tanner's Schedule A–3 lists 9 unsecured creditors (including Russell), and unsecured debt of approximately $50,000. Because the Section 341(a) meeting notice indicated there were no assets and directed creditors not to file claims, it is not now possible to calculate what Russell would get with the transfer undone under a Chapter 7 distribution. The amount of the preference is presently indeterminate.

## VI. FRAUDULENT TRANSFER

■ The trustee has not alleged Debtor gave the quit claim to Russell to hinder,

delay or defraud any entity, but contends the transfer was fraudulent under the Bankruptcy Code because Debtor received less than reasonably equivalent value in exchange for the deed, and was, or became, insolvent at the time of the transfer. Section 548(a)(2). Russell asserts she gave reasonably equivalent value, by releasing Debtor from an obligation of roughly $20,-000, which the trustee has not seriously controverted.

Because § 548(d)(2)(A) includes satisfaction of an antecedent debt of debtor within the meaning of "value", the transfer to Russell was fraudulent only to the extent that Debtor's interest in the property was worth more than the $20,000 she owed on the date she gave the deed.

### VII. CONCLUSION

Russell's possession of the real property perfected the transfer of Debtor's interest to her when the quit claim deed was executed and delivered, more than 90 days prior to the petition. However, Russell was an insider, and Debtor's transfer to her was preferential to the extent Russell received more than she would as an unsecured creditor in a Chapter 7 liquidation. That transfer was also fraudulent under the Bankruptcy Code to the extent that the value of Debtor's half interest exceeded what she owed Russell.

As the interest in the house is Debtor's only asset, and the trustee has established the prerequisites for a sale under § 363(h)(4), that sale may proceed, and it will establish the amount of Russell's preference (and possibly, fraudulent transfer): the trustee shall distribute, in normal Chapter 7 fashion, the one-half of the net proceeds from the sale of the house attributable to Tanner's interest and the post-petition rent due from Russell, and Russell will receive what she is entitled to under Chapter 7.

### VIII. ORDER

There remain no material issues of fact, the foregoing are my Findings and Conclusions, and the Trustee's Motion for Summary Judgment is GRANTED. The trust-

ee may sell the property pursuant to § 363(h), and shall submit an appropriate Order of Sale, and, when the amounts of the preference and fraudulent transfer are established, a Judgment.