**In re Zachariah Hayes ALLEN and Glen Royce Favre, Debtors.**

**James H. BONE, Standing Chapter 13 Trustee, Movant,**

**v.**

**Zachariah Hayes ALLEN and Glenn Royce Favre, Respondents.**

**Bankruptcy No. A95–63953–ADK.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 3, 1995.

James H. Bone, Chapter 13 Trustee, Atlanta, GA.

A. Keith Sanders, Mary Ida Townson, Clark & Washington, P.C., Atlanta, GA, for respondents.

### *MEMORANDUM OF OPINION*

ARMAND DAVID KAHN, Bankruptcy Judge.

This contested matter calls upon the Court to interpret the word "spouse" as used in § 302 of the Bankruptcy Code (11 U.S.C. § 302), which governs the filing of a joint petition in bankruptcy. Specifically, the issue before the Court is: Can a same sex couple qualify as a debtor and spouse within the meaning of § 302? The Court finds this matter to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### I. Procedural Background

The Debtors filed their joint petition for relief under Chapter 13 of the Bankruptcy Code on March 22, 1995. The Chapter 13 Trustee (the "Trustee") filed an objection to confirmation, contending that the Debtors did not qualify as a debtor and spouse within the meaning of § 302. A hearing was held on June 7, 1995,[1] after which the Court took

---

**1.** At the hearing, the possibility was discussed that the Debtors could have filed separate bankruptcy petitions and moved for joint administration. However, upon review of Fed.R.Bankr.P. 1015, joint administration does not appear to be available to individual debtors who are not husband and wife or general partners. Fed. R.Bankr.P. 1015(b). *But see In re Coles,* 14 B.R.

the matter under advisement and gave the Parties the opportunity to file briefs. The Court has considered the briefs and the responses thereto and now makes the following findings of fact and conclusions of law.

## II. Findings of Fact

The Debtors are two men who have a long-term, homosexual relationship. Their relationship is such that it has many of the same characteristics of a typical marriage between a man and a woman. On February 12, 1993, in Las Vegas, Nevada the Debtors participated in a religious ceremony conducted by a Baptist minister in which they exchanged vows. Since that time, the Debtors have cohabitated and have shared their lives together, including incurring debts together. Approximately 92% of their debts are joint debts. Stipulation of Facts, ¶ 3. The Debtors consider themselves to be married despite the fact that they do not have a marriage license. The Debtors acknowledge that their relationship is not legally recognized as a marriage under the laws of either Nevada or Georgia.[2]

## III. Conclusions of Law

■ Section 302(a) of the Bankruptcy Code provides that

A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter *by an individual* that may be a debtor under such chapter *and such individual's spouse.*

11 U.S.C. § 302(a) (emphasis added). Section 302 permits the joint administration of the estates of a debtor and the debtor's spouse. It creates no substantive rights. *Reider v. Federal Deposit Ins. Corp. (In re Reider),* 31 F.3d 1102, 1109 (11th Cir.1994).

Joint administration is thus a procedural tool permitting use of a single docket for administrative matters, including the list-

ing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other ministerial matters that may aid in expediting the cases. *Id.*

■ The Bankruptcy Code does not define the term "spouse." The legislative history for § 302 states that "[a] joint case is a voluntary bankruptcy case concerning a wife and a husband." H.R.Rep. No. 595, 95th Cong., 1st Sess., 321 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6277; S.Rep. No. 989, 95th Cong., 2nd Sess. 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5818. The Trustee appears to contend that this language in the legislative history makes it clear that Congress intended to limit those eligible to file a joint bankruptcy petition under § 302 to husbands and wives. Brief in Support of Trustee's Objection to Confirmation at 2.

The Court does not find the above legislative history as persuasive as the Trustee. In fact, the Court finds nothing in the history of this section to indicate that Congress ever contemplated or anticipated that a same sex couple would attempt to file a joint petition. For the same reasons the Court rejects the Debtors' argument below that Congress intended to keep the term "spouse" open to an expansive definition, the Court rejects the argument that this language demonstrates that same sex couples are to be excluded. Thus, on this particular aspect of the issue *sub judice,* the Court gives little weight to this legislative history. As will be discussed below, however, it does indicate that Congress intended that, to be eligible to file a joint petition, the parties must be legally married.

### A.

■ Where a word is not specifically defined in a statute, it is presumed that Con-

---

5 (Bankr.E.D.Pa.1981) (heterosexual, cohabitating couple not eligible to file joint case under § 302, but cases may be jointly administered).

**2.** The Debtors argue that a same sex marriage is not illegal in Georgia, contending that the only prohibition against such a union is that they cannot obtain a marriage license. "Debtors' Response to Brief Filed by Trustee in Support of Objection to Confirmation and Debtors' Brief Requesting Confirmation of Chapter 13 Plan" at

14–15. As both the Trustee and the Debtors agree that the Debtors do not have a legally recognized marriage by the State of Georgia, the Court finds it unnecessary to determine whether the Debtors' relationship is illegal in Georgia. The Court would note, however, that the Georgia law on sodomy has been upheld by the United States Supreme Court. *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).

gress intended the word's common and approved usage to control. 2A Norman J. Singer, Sutherland Statutory Construction § 46.01, at 83 (5th ed. 1991). *The Random House College Dictionary* 1272 (1980) defines "spouse" as "either member of a married pair in relation to the other; one's husband or wife." *Black's Law Dictionary* 1402 (6th ed., 1990) defines "spouse" as "[o]ne's husband or wife." Therefore, it appears that the term "spouse" is defined in terms of husband or wife, which presupposes a marriage.

Although there are no reported cases on the specific question of whether a same sex couple can file a joint bankruptcy petition, courts have considered other attempts to file a joint petition. For example, a court has rejected the attempt to file a joint petition by a mother and daughter. *In re Lam,* 98 B.R. 965 (Bankr.W.D.Miss.1988). *See also In re Simon,* 179 B.R. 1, 6 (Bankr.D.Mass.1995) (individual and trust); *In re Jackson,* 28 B.R. 559 (Bankr.E.D.Pa.1983) (mother/father/son).

The case most analogous to the case *sub judice* is *In re Malone,* 50 B.R. 2 (Bankr. E.D.Mich.1985). In *Malone,* the court had to determine whether a man and woman who cohabitated but were not legally married were eligible to file a joint petition. This couple shared living expenses, owned property together, and raised their natural children together. The court found that the statutory requirements of § 302 had not been met because the debtors were not married. *Id.,* at 3.

The Debtors contend that the lack of a definition of "spouse" in the Bankruptcy Code is significant. They point to the case of *Wiswall v. Tanner (In re Tanner),* 145 B.R. 672 (Bankr.W.D.Wash.1992). In *Tanner,* a trustee was attempting to recover an alleged preference from the debtor's former lesbian lover. The court had to determine whether the former lesbian lover was an insider as defined by § 101(31)(A). The court found that Congress had intended the definition of "insider" to be expansive and " 'flexibly applied on a case by case basis.' " 145 B.R. at 677 (quoting *In re Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206, 210 (5th Cir.1983)). The court then concluded,

under the facts of the case, the former lesbian lover qualified as an insider.

The Debtors argue that, just as the *Tanner* court used a case by case approach to define "insider," this Court should use the same approach to define "spouse."

> In this case, the term spouse does not have the rigid definition that the term insider has and therefore it must have been the intent of Congress to leave the term spouse open so that it could be expanded to diminish society's prejudices and therefore implement the underlying purpose of the bankruptcy code and allow these Debtors an opportunity to reorganize their debts.

"Debtors' Response to Brief Filed by Trustee in Support of Objection to Confirmation and Debtors' Brief Requesting Confirmation of Chapter 13 Plan" ("Debtors' Brief") at 19–20. The flaw in the Debtors' contention that Congress intended the word "spouse" to be interpreted expansively like the term "insider" is that the manner in which Congress has used the terms "insider" and "spouse" in the Bankruptcy Code differs. The term "insider" is a term of art and as such required Congress to include a definition. Congress did indeed intend to make its definition flexible and expansive by prefacing the definition with the words: " 'insider' *includes.*" § 101(31) (emphasis added). By contrast, Congress apparently saw no need to supply the definition of "spouse"—not intending to allow an expansive, case by case approach to its definition, but rather to limit it to its common usage.

The Debtors propose the following definition of the term "spouse:"

> two persons who cohabitate, have a positive mutual agreement that is permanent and exclusive of all other relationships, share their income, expenses and debts, and have a relationship that they deem to be a spousal relationship.

Debtors' Brief at 10. In other words, the Debtors are suggesting a subjective test for the qualification of being a spouse. Presumably, a court would make a case by case inquiry to determine whether a couple qualified as a debtor and spouse for the purposes of § 302. Much would hinge on the parties'

intent. If, in their minds the parties are married, then they would qualify as spouses.

■ This would, in fact, create a federal standard for marriage, and, indeed, the Debtors contend that state law is irrelevant for defining the meaning of "spouse" in § 302.[3] Debtors' Brief at 12–14. The Debtors look to the case of *Kahn v. Immigration and Naturalization Service,* 36 F.3d 1412 (9th Cir.1994) for support. In *Kahn,* the Court reviewed a decision by the Board of Immigration Appeals which adopted state law in determining whether an alien convicted of a serious drug offense had sufficient family ties in the United States to be entitled to a waiver of deportation. In holding that state law should not control, the court stated that the Immigration and Nationality Act "'was designed to implement a uniform federal policy,' and the meaning of concepts important to its application are 'not to be determined according to the law of the forum, but rather require[ ] a uniform federal definition.'" 36 F.3d at 1414 (quoting *Rosario v. INS,* 962 F.2d 220, 223 (2nd Cir.1992)).

*Kahn* is distinguishable from the case *sub judice* in that there is no indication that Congress intended to establish a federal definition of marriage. Laws on marriage have traditionally been left to the states to control. The Court can find nothing in § 302 which demonstrates Congress' intent to alter this tradition. For the reasons previously stated, the Court rejects the Debtors' proposed definition of "spouse" opting rather for the common definitions quoted above.

Requiring that a debtor and spouse be legally married in order to qualify to file a joint bankruptcy petition is more than a mere technicality. Marriage is a legal relationship. Significant rights and obligations arise upon marriage. Certain property rights, evidentiary privileges, and tort and contract rights may be altered. Therefore, limiting the ability to file a joint petition to legally married couples has a very rational basis.

The Court is not unaware that there may come a time when a state does legally recognize a marriage between a same sex couple. For example, the Supreme Court of Hawaii has remanded a case to the lower courts for the state to demonstrate, under a strict scrutiny standard, that a statute restricting the marriage of same sex couples "furthers compelling state interests and is narrowly drawn to avoid unnecessary abridgements of constitutional rights." *Baehr v. Lewin,* 852 P.2d 44, 68 (Haw.1993) (citations omitted).[4] In the Court's opinion, if a state recognizes a legal marriage between a same sex couple, they would qualify for relief under § 302 of the Bankruptcy Court. In other words, what is controlling is the fact that the parties are legally married. It is not limited to legally married husbands and wives. The Court has already determined that Congress did not anticipate the marriage, legal or otherwise, of a same sex couple. If it comes to pass that a state does recognize such marriages, and if Congress wants to limit relief under § 302 to married, heterosexual couples, thereby creating a federal standard for the meaning of "spouse" in the Bankruptcy Code, it may amend § 302 accordingly.

**B.**

■ The Debtors argue that, if the Court finds that the Debtors are ineligible to file a joint petition under § 302 of the Bankruptcy Code, their rights under the equal protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution will be violated.

---

3. Debtors go so far as to state that "[t]he laws of the State of Georgia have nothing to do with how **any** term used on [*sic*] the Bankruptcy Code should be defined." Debtors' Brief at 13 (emphasis in original). This is an inaccurate statement. For example, the question of what is property of the bankruptcy estate is controlled to a large extent by state law. *See Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Therefore, it is neither unusual nor inappropriate to look to state law for certain purposes, including the determination of whether or not two people are married.

4. In contrast to the *Baehr* case, another court has recently affirmed the denial of a complaint for an injunction to require that a clerk issue a mar-

Debtors' Brief at 20.[5] The Debtors contend that the Court will be denying them the right to file a joint petition based solely on their homosexual relationship and the resulting lack of ability to obtain a marriage license. This is not the basis of the holding of the Court today.

The Court holds that, in order to qualify to file a joint petition under § 302 of the Bankruptcy Code, the two parties must be legally married. This applies to both heterosexual and homosexual couples. Therefore, there is no violation of the Debtors' constitutional rights. In order for the Court to find a constitutional violation, the Court would have to hold that the denial of a marriage license to the Debtors by the State of Georgia is unconstitutional. This, in essence, is what the Debtors are asking the Court to do. First, it should be noted that there is no evidence before the Court that the Debtors have ever applied for a marriage license. However, it is assumed, for the purposes of the issue before the Court, that Georgia would decline to issue a marriage license to the Debtors.[6]

This leads to the question of whether such a denial by Georgia would be constitutional. Pursuant to 28 U.S.C. § 1334(c)(1), the Court abstains from considering this issue. The Court will not allow the Debtors to challenge Georgia's laws on marriage through the "back door" by litigating their validity before the bankruptcy court. If the Debtors are truly interested in pursuing their right to enter into a legally recognized marriage, they should bring an action before the appropriate state forum. This Court will not accept the Debtors' invitation to declare a state's marriage laws invalid. The Court is convinced that Congress had no intention of bankruptcy courts' entertaining this type of litigation.

## IV. Conclusion

In summary, the Court finds that, in order for two debtors to qualify as a debtor and spouse within the meaning of § 302 of the Bankruptcy Code, they must be legally married. Therefore, the Debtors are not eligible to file a joint bankruptcy petition. The Court will allow the Debtors twenty (20) days to amend the instant bankruptcy petition to delete one of the Debtors and to amend the proposed Chapter 13 plan accordingly. The other Debtor may file his own bankruptcy petition. In the event the Debtors choose not to amend their bankruptcy petition, the case will be dismissed.

An appropriate Order is entered contemporaneously herewith.

## *ORDER*

In accordance with the reasoning in the accompanying Memorandum of Opinion,

**IT IS THE ORDER OF THE COURT** that the Chapter 13 Trustee's Objection to Confirmation be, and the same hereby is, **SUSTAINED.**

**IT IS THE FURTHER ORDER OF THE COURT** that the Debtors are hereby directed to amend their bankruptcy petition and proposed plan in accordance with the Court's accompanying Memorandum of Opinion within **twenty (20) days** of the entry of this Order or the Court will dismiss the case without further notice or hearing.

The Clerk is hereby **directed** to serve a copy of this Order and the accompanying Memorandum of Opinion on the Debtors, the Debtors' attorney, and the Chapter 13 Trustee.

**IT IS SO ORDERED.**

---

riage license to two homosexual men. *Dean v. District of Columbia*, 653 A.2d 307 (D.C.1995).

**5.** The Court notes that there is no constitutional right to obtain a discharge in bankruptcy. *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Therefore, the Debtors' constitutional arguments properly focus on equal protection and due process.

**6.** The Court further notes that the Debtors exchanged vows in Nevada, and it appears that they never applied for a Nevada marriage license either. However, because the Debtors are now residents of the State of Georgia, the Court focuses on Georgia's marriage laws.